# TUCKETT v. AMERICAN STEAM & HAND LAUNDRY.*

No. 1627.   Decided February 13, 1906 (84 Pac. 500).

1. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE MACHINERY —PROOF OF PRECISE DEFECT—NECESSITY.—It is not necessary for an employee suing for injuries received in consequence of defective machinery to prove the precise defect.[1]

2. TRIAL—NONSUIT—HEARING OF MOTION—WEIGHING TESTIMONY.— On a motion for a nonsuit, the court cannot weigh the testimony, but must consider it in the most favorable light for plaintiff.

3. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE MACHINERY —NEGLIGENCE.—Evidence, in an action for injuries received by a laundry employee while operating an ironing machine, examined, and *held* that the question of the employer's negligence arising from its failure to provide a safe machine was for the jury.

4. SAME—PROXIMATE CAUSE.—Evidence, in an action for injuries received by a laundry employee while operating an ironing machine, examined, and *held* that the question whether the negligence of the employer in failing to provide a safe machine was the proximate cause of the injury was for the jury.

5. SAME—ASSUMPTION OF RISK.—A laundry employee who merely knew that the ironing machine she operated ran in a jerky, unsteady manner did not as a matter of law assume the risk of injury arising from the machine suddenly starting forward.

6. SAME—CONTRIBUTORY NEGLIGENCE.—Neither was she as a matter of law guilty of contributory negligence.

---

*Servant's assumption of risk as affected by danger imperfectly appreciated, see note, 4 L. R. A. N. S. 990,

[1] Mangum v. Bullion, etc., Min. Co., 15 Utah 534, 50 Pac. 834.

7. SAME—RELIANCE OF MASTER'S PERFORMANCE OF DUTY.—An employee has the right to assume that the employer will use reasonable diligence in furnishing him with a machine suitable to operate, and on the employer's failure to do so the employee may recover for the injuries sustained, unless the defect causing the injury were known to him or so patent that he could readily have observed it.

8. SAME—INJURY TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.—Evidence, in an action for injuries received by a laundry employee while operating an ironing machine, examined, and held that the question whether she assumed the risk arising from the sudden starting forward of the machine was for the jury.

9. SAME—ORDERS OF MASTER—NEGLIGENCE.—The order of an employer to an employee to perform his work in a particular manner may be negligence, and, when it is negligence, the employee injured by reason of compliance therewith may count on such negligence in suing for his injury.

10. SAME—BURDEN OF PROOF.—An employee seeking a recovery for injuries based on the ground that the same were occasioned by a compliance with the order of the employer directing the performance of the work in a particular manner must show that the obeying of the directions was the proximate cause of the injury.

11. SAME—NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY.—Evidence, in an action for injuries received by a laundry employee while operating an ironing machine, examined, and held that the question whether the proximate cause of the injury was the employee's compliance with the employer's orders directing the manner of doing the work was for the jury.

12. SAME—DEFENSES.—In an action for an injury sustained by an employee based on the act of the employer's negligence in giving an order directing the manner of the doing of the work, the employer may plead the defense of assumed risk and contributory negligence.

13. SAME—CONTRIBUTORY NEGLIGENCE.—Evidence, in an action for injuries received by a laundry employee while operating an ironing machine, examined, and held that the question of contributory negligence was for the jury.

APPEAL from District Court, Salt Lake County; T. D. Lewis, Judge.

Action by Matilda Tuckett against the American Steam & Hand Laundry. From a judgment of nonsuit, plaintiff appeals.

REVERSED.

*Powers, Straup & Lippman* for appellant.

*Sutherland, Van Cott & Allison* for respondent.

### APPELLANT'S POINTS.

In *Lee v. Railroad Co.*, 101 Cal. 118, the Supreme Court of California, respecting the risk of an employee, said: "It is not only necessary that an employee should know of the defect in the machinery in order to hold that he assumed the risk, but the danger arising from the defect must also be known or reasonably apprehended by him." So in *Railroad Co. v. Herbert,* 116 U. S. 642, Mr. Justice Field said: "The servant does not undertake to incur the risks arising from the want of sufficient and skillful colaborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provisions that no danger will ensue to him. This doctrine has been so frequently asserted by courts of the highest character that it can hardly be considered as any longer open to serious question." (Shear & R., Neg., sec. 92; *Harrison v. Railway Co.*, 7 Utah 523; *Pidcock v. Railway Co.*, 5 Utah 612; *Railroad Co. v. Baugh,* 149 U. S. 368; *Huhn v. Railway Co.*, 92 Mo. 440; *Settle v. Railway Co.*, 127 Mo. 336; *Chapman v. Southern Pac. Co.*, 12 Utah 30; *Hawley v. Railway Co.*, 82 N. Y. 370.)

### RESPONDENT'S POINTS.

The condition of this machine was entirely open and obvious, and plaintiff was bound to know it, and the danger arising from its operation was one of the assumed risks of her employment. (*Gilbert v. Guild.* 144 Mass. 601, 604; *Upthegrove v. Jones & Adams Coal Co.* [Wis.], 96 N. W. 385; *Kupkofski v. Spiegel* [Mich.], 97 N. W. 48; *Keenan v. Waters* [Penn.], 37 Atl. 342; *Helmke v. Thilmany,* 107 Wis. 216; *Coyle v. Iron Company,* 47 L. R. A. 147; *Egnor v. Lumber Co.*, 92 N. W. 242; *Blom v. Yellowstone Association,* 90 N. W. 397; *Lumber Co. v. Mooney,* 42 Pac. 952; *Chair Co. v. Fuelner,* 63 N. E. 239; *Packing Co. v. Marcan,*

106 Fed. 645; *French v. Ry. Co.,* 63 Pac. 1108; *Higgins Carpet Co. v. O'Keefe,* 79 Fed. 900; *Cook v. Mining Co.,* 12 Utah 51; *McGlynn v. Brodie,* 31 Cal. 376; *Fritz v. Electric Light Co.,* 18 Utah 493; *Sweet v. Coal Company,* 9 L. R. A. 861; *Perry v. Schmidt,* 116 Fed. 627.)

The rule of assumption of risks applies not only to those existing at the time of the employment, but to those subsequently arising, of which the servant has knowledge or is bound to have knowledge. (*Sowden v. Company,* 55 Cal. 443; *Furnace Co. v. Abend,* 107 Ill. 51; 2 Thompson on Negligence [Old Ed.], 1008; *Railway Co. v. Barber,* 5 Ohio State 541, 564.)

The order of the master to perform the service is not material where it appears that the servant had knowledge, actual or constructive, of the risk, and encountered it without coercion. (1 Thompson's Neg., sec. 56; 1 Labatt, Master & Servant, sec. 438; *Kean v. Copper Mills,* 66 Mich. 277; *Graves v. Brewer,* 38 N. Y. Supp. 566; *Anderson v. Winston,* 31 Fed. 528; *Hogan v. Railway Co.,* 53 Fed. 519; *Anderson v. Lumber Co.,* 49 N. W. 664.)

We also insist that, under the circumstances of the case, she was guilty of contributory negligence, notwithstanding any direction which she may have received. (1 Labatt, Master & Servant, sec. 442; *Bradshaw v. Railway Company,* 21 S. W. 346; *Jones v. Railway Company,* 31 S. W. 706; *Robinson's Administrator v. Dinning,* 30 S. E. 442; *Davis v. Railway Company,* 18 So. 173; *Railway Company v. McGraw,* 45 Pac. 385; *Roul v. Railway Company,* 11 S. E. 558; *Lee v. Railroad Company,* 101 Wis. 352; *Badger v. Janesville Cotton Mills,* 95 Wis. 599; *Groth v. Thoman,* 110 Wis. 499, 494; *Stafford v. Railway Co.,* 85 N. W. 1036; *Maryland v. Railway Co.,* 16 Atl. 623; *Cleveland etc. R. Co. v. Coffman,* 64 N. E. 233.)

### STATEMENT OF FACTS.

The plaintiff brought this action to recover damages from the defendant for personal injuries alleged to have been sus-

tained by her while working at a shirt-bosom ironer in a laundry operated by defendant and as a result of its negligence. The complaint, after alleging that the defendant was at the time of the accident and the bringing of the action a corporation organized and existing under the laws of the state of Utah and engaged in the business of operating a laundry, in which was used a certain machine called a shirt-bosom ironer, proceeds to set forth the grounds of negligence on the part of the defendant in respect to the said machine and the plaintiff while operating it, as follows: (1) That the defendant so negligently and carelessly adjusted the ironing machine, and so negligently and carelessly suffered and permitted the same to be out of repair; and so negligently and carelessly suffered and permitted the brake and levers of said machine to be and remain rusty and difficult of operation, so that the said machine, and especially the pressure of the heated roller on the ironing board or table, could not be regulated and controlled, whereby and because of which the ironing board or table would not freely pass underneath the roller of the said machine at the proper distance and place intended for it, and would not release itself and return automatically, as was intended. (2) That the defendant so negligently and carelessly adjusted the said machine and suffered and permitted it to be out of working order, so that it would run in a jerking and irregular manner, and so that the heated roller did not work properly, but at times slipped and revolved with greater rapidity than at other times. (3) That the defendant negligently and carelessly failed to guard or protect the roller of said machine so as to prevent the hand or arm of the person operating it from being drawn in between the said roller and the ironing board or table. (4) That the defendant carelessly and negligently failed to properly instruct the plaintiff in respect to the mechanism of the said machine, or as to the use thereof, or as to the manner of prosecuting or performing her work thereat, and failed and neglected to warn her of the dangers and risks incident thereto, and especially of the danger and risk of her arm or hand being drawn in between the roller and the ironing table or board of

the said machine, although plaintiff was ignorant of the said dangers and risks. (5) That, on the contrary, the defendant negligently and carelessly instructed and directed the said plaintiff in the prosecution of her work to take hold of said ironing board or table with her hands, and to hold thereto so as to prevent it being propelled too far underneath and past the said roller of the said machine, and by hand to pull or draw the same back and return it to its former position, all of which was an improper and unskillful way and manner of prosecuting said work, as plaintiff is now informed, but of which fact she knew not at the time of her injury; such method being made necessary, however, by reason of the machine being improperly adjusted and out of working order. The complaint concludes by alleging that whilst the plaintiff was operating the ironing machine as directed, whilst she was exercising ordinary care on her part, and whilst she was ignorant of the dangers involved therein, her hand was, in consequence of the aforesaid acts of negligence of the defendant, drawn in between the roller and the ironing board and table, as a result of which it was injured and a portion of it had to be amputated.

The answer of the defendant admits, first, that at the time of the accident and of the bringing of the action it was a corporation existing under the laws of Utah; second, that it was at said times engaged in the business of operating a laundry, and was using therein the ironing machine described in the complaint; third, that the plaintiff, when injured, was in the employ of the defendant, was operating the machine in question, and was injured as set forth in the complaint, but denies each and every other allegation (that is, the answer denies that the defendant was guilty of any of the acts of negligence set forth in plaintiff's complaint). Further answering, the defendant affirmatively alleges that the plaintiff had been employed to run the machine, was familiar with its operation, understood the dangers incident to running it, and therefore assumed all risk of injury therefrom. Also that plaintiff's act in placing her hand on the ironing board as it was about to pass under the heated roller was unnecessary, and consti-

tuted negligence, which proximately contributed to her injury.

The facts, as developed at the trial from the testimony introduced on behalf of the plaintiff, are as follows: The defendant was, at the time the plaintiff received her injuries, engaged in the business of conducting a laundry in Salt Lake City. The plaintiff, at the time of the accident was about twenty-two years of age, was employed by the defendant as a laundress, and had been so employed for about two years and a half. Prior thereto she had been engaged in the same occupation at another laundry for about a year and a half, and, during her entire experience, had worked at several different ironing machines, more or less similar to that at which she was injured, though she had no technical knowledge of the mechanism of any of them. She had operated two different sorts of mangles, which, according to her testimony, consist of a pair or more of large rollers, between which the articles to be smoothed are passed over a stationary table in front of them, apparently much as they would be passed between an ordinary clothes wringer, and they are used for ironing large pieces, like sheets and blankets. Some mangles are provided with guards in front of the rollers to prevent the hands from being drawn in between them while feeding the cloth in; others are not. The plaintiff had had experience with both. She had also worked on a body ironer, a machine for smoothing the unstarched portions of a shirt, and which is similar to a mangle, only that it is smaller, and is operated in practically the same manner. She had run a wristband machine, which consists of two rollers which are brought together by means of pressing on a foot treadle, the wristband being fed between the rollers much in the same manner as pieces are fed into a mangle; the differences being that the wristband ironer is smaller than the mangle, there is no table in front of it, and the upper roller is heated, which is not the case with the mangle. The shirt-bosom ironer by which plaintiff was injured differs in construction and operation from any of the ironing machines that have been described, and which may be regarded as of the mangle type. It consists of a table

or board fastened to a pivotal stand; the top of the table or board being about four feet from the floor. The shirt bosom is fastened to the table or board, and then the latter is pushed forward by means of a foot treadle on the left side of the machine, until it comes under a heated roller. The treadle is connected with three pulleys, one a stationary pulley, and the other two slip pulleys. Two belts run from the pulleys to a countershaft, which is kept revolving by the motive power of the plant; steam being the power used in this laundry. By pressing the toe upon the treadle, one of the belts is thrown on to the stationary pulley from the outside slip pulley, and the movable table or board is sent forward under the before-mentioned roller, and when the toe is lifted from the treadle, and the heel pressed thereon, the other belt is thrown from the other slip pulley onto the stationary pulley in a reverse motion, and the movable table or board is then apparently supposed to return automatically to its former position. Before the ironing table or board is set in motion the shirt bosom is fastened thereto, under side uppermost, with the neckband toward the roller and the tail of the shirt toward the operator; the ironing table or board being about the size of an ordinary shirt bosom. On the right of the machine is a lever, which works in a ratchet wheel; the purpose thereof being to bring the ironing table or board up to the roller and thus regulate the pressure.

The plaintiff was set at work at this shirt-bosom ironer as soon as it arrived from the factory and was installed in defendant's laundry which was about three months before the accident occurred. She had never, prior to that time, used a laundry machine precisely like it, though she had for about a year prior thereto operated a shirt-bosom ironer, which was similar to it, except that it had no lever on it to regulate the pressure. When the machine was set up, the superintendent of the laundry, Mr. Thomas Mathews, explained to the plaintiff how it should be operated. He showed her how to fasten on the shirt, which was done in a somewhat different manner than on the other ironer, explained to her that the purpose of the lever was to bring the ironing table or board

up to the roller, and instructed her to run it through to the end of the table or board and back again. The plaintiff testified that, when she did so, the table or board would return automatically. Ten days or two weeks later the same superintendent instructed her to let the table or board run not only through to its end, but clear through to the bumper, which consisted of an arm on the back bar of the frame of the machine, and opposite the operator. Plaintiff testified that she did so, and was then obliged to take hold of the forward end of the table or board with her hands and pull it back. All this time the machine ran in an unsteady and jerky manner, and the plaintiff testified the superintendent, as well as the foreman, had frequently passed by her while it was running in that manner and had had an opportunity to observe it. Indeed, the plaintiff called his attention to the fact. Then he went on a trip, and about a week after his return, on the morning of the accident, the plaintiff made complaint to him about the manner in which the machine acted. She told him that the lever was rusty; that it was difficult to lift it; that the machine ran very hard; that it sometimes went slow and sometimes went fast; and that she could never depend upon it. The superintendent, who was standing by her at the time and in a position to observe the machine, assured her that it would regulate itself in time, that it would run easier in time in using it, and he thereupon instructed her to run it so that the table or board would not touch the bumper. He also told her to keep her hand on top of the board on the shirt, in order to prevent it from going clear through to the bumper. The plaintiff commenced to operate the machine in conformance with these last instructions given her; this being the first time she had ever put her hand on top of the board or table, although she had previously taken hold of the edge of it to pull it back when it was being run through to the bumper. When operating the machine in this manner, according to her latest instructions, she was compelled to pull the table or board back with her hands because it did not return automatically. She had worked in this manner about an hour. Her left hand was on top of the table or board to steady it

and prevent it going clear through to the bumper, when it gave a sudden start forward and the table or board went more swiftly than ever before, and thus drew her hand right in between it and the roller, and she was unable to get it out until the superintendent came to her assistance. She was then taken to the hospital and a portion of her hand amputated.

At the close of the plaintiff's case the defendant moved for a nonsuit, the principal grounds of which may be reduced to the following propositions: First, it is contended that there was no evidence of negligence on the part of the defendant in respect to the machine in any particular, or toward the plaintiff who was operating it; second, that, even assuming there was, the condition of the machine was entirely open and obvious, the plaintiff was bound to know it, and the danger arising from its operation was one of the assumed risks of plaintiff's employment; and, third, that in operating the machine in the manner she did the plaintiff was guilty of contributory negligence. The court sustained the motion for a nonsuit and dismissed the case, and from the judgment entered thereon, the plaintiff has appealed to this court.

HOWELL, District Judge, after stating the facts delivered the opinion of the court.

Though made as one of the grounds for a motion for a nonsuit, counsel for respondent did not, in their oral argument, nor do they in their brief, very strenuously contend that the plaintiff failed to establish that respondent was negligent in permitting the machine to be in the condition disclosed by the testimony in this case. The evidence shows that, "when the machine is in good working order, the table comes back automatically." It is true that while appellant testified positively that to the knowledge of the respondent, through its superintendent, the machine ran in a jerky and unsteady manner while she was operating it, and that the ironing board or table would not return automatically to its place after being sent forward under the roller, she was not able to point out the particular defect in the machine which was the cause of it running in the manner it did and being in the condition

in which it was. This difficulty was, however, fully considered in the case of *Mangum v. Bullion, etc., Min. Co.,* 15 Utah 534, 50 Pac. 834, and it was therein held that it was not necessary for the plaintiff to point out the precise defects. It appeared in that case that the plaintiff was injured by reason of the unsafe and defective condition of the machinery connected with and used in the hoisting of a cage in defendant's mine. Justice Bartch, delivering the opinion of a unanimous court, used the following language with reference to the objection made that the particular defect that caused the injury was not pointed out by the plaintiff:

"It is also urged that the respondent cannot recover, because he failed to show specifically what particular defect caused the accident. If this position were sound, then, in many cases of this character, the injured servant could not recover, regardless of the negligence of the employer; for, while such servant may know the general or immediate cause of the injury, it frequently happens that he is unable to point out the particular defects which actually did cause it, and yet it may be clear enough that the employer's negligence was the proximate cause. In this case the immediate cause of the injury was clearly shown; and if, as the jury must have found, the occurrence took place through the negligence of the employer, and if the evidence warrants such a finding, and we think it does, then the plaintiff is entitled to recover, notwithstanding that no witness was able to name with absolute certainty the exact mechanical defect which caused the cage to stop. In *Nelson v. Plow Works,* 57 Minn. 48, Mr. Justice Mitchell said: 'If the evidence justified the jury, as we think it did, in finding that the "drop" fell because of the defective condition of the machine, and that such defective condition was chargeable to the negligence of the defendant, it was not essential to plaintiff's recovery that he should be able to show what the exact nature of the defect was.' (*Railroad Co. v. Lannigan* [Kan. Sup.], 42 Pac. 343.)"

So, here, if the testimony of the plaintiff be true, and we must assume that it is, for upon a motion for a nonsuit we are not only not permitted to weigh testimony as a jury would, but, on the contrary, must consider it in the most favorable light for the plaintiff, then there can be no doubt that the machine in question was in a very defective condition and defendant knew it, or ought to have known it, for the matter was brought to its attention through the complaints of the plaintiff and by the observation of the superintendent. The plaintiff could not say whether the defect resulted from

a failure to adjust the machine properly, or whether it was due to it being out of repair—all she could say was that it was not running shortly. The plaintiff was not only ignorant of the mechanism of machinery in general, but she had no knowledge of the mechanism of this particular machine, though she had operated it for some time. A person may operate a machine for a long time and yet have no technical knowledge of its construction or operation, so it is not surprising that, while the plaintiff realized that the machine was not running evenly as it should, she could assign no particular reason for it. The plaintiff also testified that, when she commenced to use the machine and allowed the table or board to run just to its end, it would return automatically to its former position; that, when she allowed it to run to the bumper, it would not so return; and that, when she again only allowed it to run to the end, it would not then return as it did at first.

It is insisted by counsel for the defendant and respondent that the failure of the table or board to return automatically could have no bearing on the accident, because the plaintiff was injured while the table or board was in the forward motion, and, while that may be true, the behavior of the table or board under these various circumstances and at these different times conclusively demonstrates that there was something wrong with the machine, for the reasonable inference from the testimony is that the table or board should have returned automatically under any and all circumstances, and would have done so had the machine been in good working order. What caused the irregularity in the action of the board or table is not so clear, but this defect, as well as the jerky running, was known to the defendant, and the causes therefore were also known, and ought to have been known by it because of its duty to inspect its machinery and keep it in repair. Under such circumstances the jury might reasonably say that the defendant had not performed its full duty to the plaintiff in exercising ordinary and reasonable care to obtain a reasonably safe machine for the plaintiff to operate. As was said in the *Mangum Case,* supra:

"While the employer is not required to furnish machinery and appliances for the use of its servant which are absolutely safe, or to furnish the best which can possibly be obtained, still it is his duty to exercise ordinary and reasonable care and diligence to obtain and furnish such as are reasonably safe, and reasonably well adapted to perform the work for which they are intended, and such as the servant may, with the exercise of ordinary prudence and care, use in the performance of his work with reasonable safety to himself; and it is likewise the employer's duty to exercise reasonable care in operating the same, and to keep them in suitable condition and repair. Whether in the case at bar the defendant, as employer, performed its duty in these regards, or whether it was negligent in furnishing the machinery and appliances used by the injured servant, or in keeping them in suitable condition and repair, were questions of fact, to be determined by the jury from all the circumstances surrounding the occurrence which caused the injury, and which were in evidence; and the record fails to present a case which authorizes the court to say as matter of law that the defendant was not negligent, and that the plaintiff cannot recover. Such a judgment is warranted only where the record presents such a state of facts that all reasonable men must arrive at the same conclusion from a consideration of them. (*Hall v. Railway Co.*, 13 Utah 259, 44 Pac. 1046, 57 Am. St. Rep. 726; *Saunders v. So. Pac. Co.*, 13 Utah 275, 44 Pac. 932.)"

If there was sufficient evidence introduced by the plaintiff to justify the court in submitting to the jury the question of whether or not the defendant was negligent in permitting the machine in question to be in a defective condition, as alleged in the complaint, then to bring the case at bar squarely within the *Mangum Case* it is only necessary to consider whether or not such negligence, if found by the jury, could be said by it to be the proximate cause of the injury. It is strenuously insisted by counsel for the defendant that, if the plaintiff had not put her hand on top of the ironing table or board and permitted it to remain there until the table or board passed beneath the roller, she would not have been injured, and therefore that circumstance was the proximate cause of the injury. This statement of counsel is based upon the assumption that the testimony of the plaintiff that the table or board at the time of the accident ran swifter than ever before cannot be credited. As has already been pointed out, however, this court is not warranted in weighing the testimony of the plaintiff and concluding therefrom that it is not to be believed.

We think there was sufficient proof of the negligence of the
defendant to go to the jury, and the court was not justified in
withdrawing the case from their consideration, unless it can
be said as matter of law either that plaintiff by her conduct
assumed the risk of injury, or that she was guilty of contribu-
tory negligence in doing what she testified she did; and, in-
deed, the principal justification for the granting of the non-
suit herein by the trial court that is put forth by counsel for
respondent is that she not only assumed the risk, but that she
was guilty of contributory negligence.

These two well-recognized doctrines of the law of master
and servant, that of assumed risk arising from the contract of
employment and that of contributory negligence growing out
of the law of torts, as applied to the contractual relation of
master and servant are not difficult to state in general terms.
They are, however, so closely related, although appertaining
to different departments of the law, that they are generally
united when speaking of the defenses which a master may
have to an act of negligence on his part toward his servant,
and not infrequently they are somewhat confused, one with
the other, by the courts. Whatever difficulties present them-
selves in regard to these two principles relating to the law of
master and servant consist not so much in any uncertainty in
the doctrines themselves, but in applying them to the varying
facts of the different cases, and these difficulties we must nec-
essarily encounter in this case. A general statement of these
two doctrines, which has been frequently quoted with ap-
proval in this court, is found in the *Mangum Case,* supra,
and, inasmuch as there is a similarity between the facts in
that case and in the case at bar, we deem it proper to quote
somewhat extensively from the opinion in that case, in order
that we may consider how the principles therein enunciated
affect the case before us. Justice Bartch, speaking upon this
subject, used the following language:

"It is also insisted for the appellant that the injury which the plain-
tiff sustained was incident to his employment, and that he assumed the
risk. The mere fact that the respondent was aware that the cage was
shaking, and not running smoothly, is not sufficient to justify us in

holding that he had assumed the risk, and there is no evidence to show that the defects were of such an obviously dangerous character that he ought to have appreciated the risk, and ceased his employment, or that a man of reasonable precaution, placed under similar circumstances, would have done so. It is shown that the plaintiff was not skilled in mechanic arts, had never worked in a machine shop, and never had anything to do with machinery, except in this mine. Therefore he had the right to rely, at least to a reasonable extent, on the judgment of his employer, who is presumed to have a knowledge of the machinery used in his business, and to assume that he would discharge his duty by furnishing reasonably safe machinery, and keeping it in proper condition and repair. Where an employee has knowledge of defects in machinery used in his employment, and the defects are not so dangerous as to threaten immediate injury, or the danger is not such as to be reasonably apprehended by him, his continuance in the service will not defeat a recovery for injuries resulting from such defects. If, however, the defects are so obviously and immediately dangerous that a person of ordinary prudence and precaution would refuse to use the machinery, then, if the servant continues its use, he assumes the risk. We think it was a question for the jury to determine whether, under all the circumstances in evidence in this case, the employee by continuing in his employment with knowledge of the defects, assumed the risk of the injury which he sustained. 'Mere knowledge of the defects is not sufficient, unless it does or should carry to a servant's mind the danger from which he suffered. A servant may assume that the master will do his duty; and therefore, when directed by proper authority to perform certain services, or to perform them in a certain place, he ordinarily will be justified in obeying orders, subject to the qualification that he must not rashly or deliberately expose himself to unnecessary and unreasonable risks which he knows and appreciates. It is one thing to be aware of defects, and another to know and appreciate the risks resulting therefrom.' (Thomas, Neg. p. 851.)

"In *Patterson v. Railroad Co.*, 76 Pa. 389, 18 Am. Rep. 412, Mr. Justice Gordon delivering the opinion of the court, said: 'In this discussion, however, we are not to forget that the servant is required to exercise ordinary prudence. If the instrumentality by which he is required to perform his service is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. In such cases the law adjudges the servant guilty of concurrent negligence, and will refuse that aid to which he would otherwise be entitled. But where the servant, in obedience to the requirements of the master, incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident.'

"In *Lee v. Railroad Co.*, 101 Cal. 118, 35 Pac. 572, the Supreme Court of California, respecting the risk of an employee, said: 'It is not only

necessary that an employee should know of the defect in the machinery in order to hold that he assumed the risk, but the danger arising from the defect must also be known or reasonably apprehended by him.'

"So, in *Railroad Co. v. Herbert*, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755, Mr. Justice Field said: 'The servant does not undertake to incur the risks arising from the want of sufficient and skillful colaborers, or from defective machinery or other instruments with which he is to work. His contract implies that, in regard to these matters, his employer will make adequate provision that no danger will ensue to him. This doctrine has been so frequently asserted by courts of the highest character that it can hardly be considered as any longer open to serious question' "—citing cases.

Comparing the facts of that case with those developed in the case at bar, we find that just as the plaintiff therein knew that the cage was shaking and rattling so the plaintiff herein knew that the ironing machine was running in a jerky, unsteady manner, but from mere knowledge of such a fact it could not be said in either case that the plaintiff had assumed the risk. In the *Mangum Case* it was shown that the plaintiff was not skilled in the mechanic arts, nor experienced in the construction of machinery, though he had worked in the mine in which he was injured some time prior thereto. So in this case, though plaintiff had been operating the machine at which she was injured for three months, she had no technical knowledge of machinery and had but an imperfect knowledge of the construction of the particular machine in question. In case cited the plaintiff knew that, if the cage stopped suddenly, he would be injured, and the plaintiff in this case knew that, if the machine suddenly started forward, her hand would probably be drawn in between the roller and the ironing board or table. But in the former case the plaintiff could not foresee that the rattling and shaking of the cage would cause it to stop as it did, and in the latter case the plaintiff could not foretell that the table or board would start suddenly forward as it did, simply because it was not running smoothly, and therefore in neither case could the plaintiff have reasonably apprehended that the defects in the machinery, of which they were cognizant, threatened immediate injury to himself or herself in such a way as to enable the court to

say as matter of law that he or she assumed the risk, or was guilty of contributory negligence.

So far we have considered the two questions, that of assumed risk and that of contributory negligence, together, because the facts of both the case cited and the case at bar are applicable to each of them, but inasmuch as there are other facts in both cases which effect the question of contributory negligence, but there are no more that bear on the question of assumed risk, we shall henceforth consider them separately.

The doctrine of assumed risk, considered by itself, is well stated in *Railroad Co. v. McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, which has also been quoted with approval ¹.ʏ this court, as follows:

"The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that where the defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus, in the face of knowledge, and without objection, without assuming the hazards incident to such a situation. In other words, if he knows of the defect, or it is so plainly observable that he might be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master notwithstanding the defect, and in such case cannot recover."

So, in the case at bar, the plaintiff had a right to assume that the defendant would use reasonable diligence in furnishing her with a machine suitable to operate, and if the defendant failed to perform that duty, as it undoubtedly did, according to her testimony, then plaintiff was entitled to recover unless the defect in the machine which caused the injury was known to her, or so patent that she could readily have observed it; but, as has been shown, she did not at the time of the accident know precisely what was the difficulty

with the machine, nor did she know when she testified, and, inasmuch as she was not a mechanic, we cannot say as matter of law that she should have observed it, although she may have believed there was something the matter with the machine.

Counsel for respondent state the general doctrine of assumed risk, from another point of view, but no less accurately, as follows:

"The master is not liable because an appliance which he furnishes for the use of his servants is dangerous, but because he permits him to work with such an appliance in *ignorance of the danger*."

Applying this general statement of the law to the case at bar, we may say that, even though the machine upon which the plaintiff was employed to work was in a dangerous condition, the defendant would not be responsible unless the plaintiff was ignorant of such danger. Of course, counsel contends that she was not ignorant, while we think that the evidence tends to show she was, so that the difference is not as to what the law of assumed risk is, but as to how it should be applied. Counsel argues that, because the plaintiff knew that the machine was defective, she knew or ought to have known of the danger as a matter of law, but, as has already been explained, it by no means follows that simply because she may have believed that the machine was defective that as a matter of law she knew, or ought to have known, that it was defective to the extent that it was dangerous, and therefore, inasmuch as the burden of proving that the plaintiff was not ignorant of the danger is upon the defendant, the question should have been left to the jury.

Counsel cite a large number of cases in which it was held, applying the principle of assumed risk stated substantially in the language above quoted to the facts of the case under consideration, that the plaintiff was not ignorant of the danger arising from the defective machinery, and was therefore not entitled to recover. As has already been said, however, the applicability of the principle depends on the precise circum-

stances of each case. An attempt, even if possible, therefore, to distinguish all those cases from that at bar, would be unprofitable. But inasmuch as counsel rely particularly upon the case of *Kupkofski v. Spiegel* (Mich.), 97 N. W. 48, and inasmuch as the facts in that case are more similar to those in the case at bar than most of the cases cited by counsel, we deem it right to consider that case somewhat in detail and by way of comparison. In that case plaintiff sued to recover damages for personal injuries received by her while operating a shirt-bosom ironer in defendant's laundry. The ground of negligence relied on was that the defendant allowed the machine, which was apparently the same as that in question here, to become out of repair. The testimony introduced on behalf of the plaintiff showed that she was seventeen years old, and had worked at the machine about two weeks, when the belt which furnished the power to the machine became loose and caused it to run with a jerky motion. With the machine running in this fashion, and while the plaintiff was holding the shirt on the ironing table or board, about six inches away from the roller, the table or board stopped and then started with a jerk, drawing plaintiff's hand under the roller. The trial court directed a verdict for the defendant, and on appeal the judgment was affirmed on the ground that the plaintiff assumed the risk, and was also guilty of contributory negligence. It will be noticed at once that, so far as the question of assumed risk is concerned, there is an all-important difference between the facts in the Michigan case and in the case at bar. In the former case the plaintiff observed the precise defect that caused the injury. She knew that the belt was loose, and that, when the friction became unusual, the machine would slow down, and, as the belt moved again to perform its office, the machine would start up again, so that she knew exactly what to expect when the machine stopped. On the contrary, in the case at bar the plaintiff only knew that the machine ran in a jerky, unsteady fashion. There was no defect apparent to her, like a loose belt, which indicated in any manner that the machine would, at any time, run faster than ever before. In the former case the court

could well say that the plaintiff should have realized the danger, that she was not ignorant of it, whereas in the present case it is impossible for the court to so say.

There only remains, then, one question to consider, namely, whether or not the court shall say that the plaintiff was guilty of contributory negligence; whether or not, under similar circumstances, and ordinarily careful person would have put his hand on the ironing board or table when it was going forward, as the plaintiff did; and whether or not such action on plaintiff's part proximately contributed to her injury, for such is the test in determining this question. In dealing with this matter, it is necessary, as already indicated, to consider certain facts developed at the trial, which were not adverted to in determining whether or not the plaintiff assumed the risk. The plaintiff in the present case complained to the defendant's superintendent about the machine not running steadily, and received the answer that it would be all right in time—after it had been used a while. So in the *Mangum Case,* heretofore cited, the plaintiff called the superintendent's attention to the defective condition of the apparatus, and was informed that the cables were going to be changed pretty soon, and that another cage would then be used. But the facts in the present case are somewhat stronger for the plaintiff than in the *Mangum Case,* because the sujerintendent not only used language to the plaintiff which was tantamount to an assurance of safety, as in that case, but went further, and gave her a direct and positive order to put her hand on top of the ironing table or board to prevent it going clear through to the bumper, the obedience to which placed her in a position to be injured. The effect of such a direct and positive order from a master to a servant to perform an act in the course of his employment, which is dangerous, or to perform such an act in a dangerous manner, is twofold. It may constitute an additional act of negligence on the part of the master. If the order of the master constitutes an act of negligence, and if the servant obeys it, and by reason of such obedience is injured, he can count upon such an act of negli-

gence when he brings an action to recover for his injury.  In order, however, to recover, he must show that the obeying of the order was the proximate cause of the injury.  So, in this case, the plaintiff did right in alleging in her complaint as a ground of recovery that the superintendent gave the order he did, though a recovery on that ground might be defeated because we are inclined to think that the obedience to the order was not the proximate cause of the injury—the plaintiff might have placed her hand on the table or board with safety had it not jumped forward—but this question should be left to the jury.  To the act of negligence in giving such an order, there may, of course, be pleaded the same defenses as to any other act of negligence, including that of assumed risk and contributory negligence, for it logically follows that a servant is not excused in obeying an order from the master when the risk arising therefrom is open and obvious, or when no person of ordinary prudence would do so.  Viewed in another light, such an order of the master may have an important bearing upon the question of whether or not the plaintiff was guilty of contributory negligence.  It has also been held in certain cases that, when a servant is directed by his master to perform a certain piece of work in a particular manner, he will ordinarily be justified in obeying the order so given, without being chargeable with the assumption of risk incident to the work.  (*Cook v. St. Paul M. & M. R. Co.* [Minn.], 24 N. W. 311; *Strong v. Iowa C. R. Co.* [Iowa], 62 N. W. 799.)

But it is well said by Mr. Labatt in his work on Master and Servant, section 438:

"For practical purposes, however, this principle is not of much importance, as the ultimate question to be determined in this, as in all other classes of cases when the defense of an assumption of the risk is put forward, is simply whether the servant had knowledge, actual or constructive, of that risk, and encountered it without being subjected to what the law regards as coercion. . . . No differentiating significance, therefore, can be ascribed to the fact that the injury was received as the result of obeying an order, where it appears that the servant was merely directed to do something which was a part of the regular work of the establishment in which he was employed, and that the risk to be encountered was fully comprehended by him."

So, if it be, as in our opinion it was, the case that plaintiff had no knowledge, actual or constructive, of the danger to which she exposed herself by obeying the superintendent's order, then, of course, no negligence on her part can be predicated upon her obedience to the order. But if it be said, and it well might be, that, if the plaintiff had placed her hand on the table or board without an order from the master so to do, she would have been guilty of contributory negligence, then such a conclusion might not be warranted when the order was given, because, though the plaintiff might well have doubted the safety of so doing if left to herself, the direction of the master might be said to have set her doubting mind at rest, and induced her to do what she would otherwise not have done. She testified, in fact, that until ordered to do so she had never placed her hand on top of the ironing table or board, though she had taken hold of the edge of it to draw it back when it had gone clear through to the bumper, and she might well have thought, when the board or table was not running as it should, that the order of the master to put her hand on top of it was for the purpose of preventing it from going too far. The order of a master, or his representative, under such circumstances as these, tends to negative the contention that the servant voluntarily encountered a danger which was, or ought to have been, comprehended by him; or, putting it in another way, it goes to show that the servant's ignorance of the hazard he was running in doing what he did is excusable.

Mr. Labatt, section 439, adverts to this subject in the following manner:

"But there is also a large class of cases in which that fact is treated as a differentiating element, and in which the courts apply a doctrine which, in so far as it is susceptible of formal enunciation, may be stated as follows: Although the circumstances, when abstracted from the fact of the giving of the order, may be such as to justify a court in holding that the servant appreciated the danger to which his injury was due, and was negligent in subjecting himself to that danger, such a conclusion is, in a large number of instances, not warrantable, if the testimony goes to show that the immediate occasion of his being subjected to that danger was his compliance with the order. The effect of this doctrine is that where the servant, in obedience to an order, performs a duty which, though dangerous, is not so dangerous as to threaten

immediate injury, or where it is reasonably probable that the work may be safely done by using more than ordinary caution or skill, he may recover if injured.  It will be seen that this rule, when analyzed, amounts to nothing more than a statement that, in determining what is ordinary care on the part of a given individual, all the circumstances of his position should be regarded, including, in cases like the present, the servant's orders, the demands of his duty, the apparent risk to be met, and the purpose of his action, no less than his physical surroundings.  Having weighed all these considerations, unless the case then discloses that the risk was such as would not be taken by a man of common prudence so situated, the court cannot justly declare that the taking of that risk by the servant, in obedience to orders, was negligence.  The practical result of such a doctrine, when stated in terms of the servant's knowledge, is that the servant may maintain an action, unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he cannot avoid by the exercise of care and caution."

The same author then gives the reasons upon which this doctrine is based, and, so far as they are applicable here, they are as follows (section 440):  First.  That

"The servant does not stand on the same footing as the master.  In other words, when a servant did not assert his judgment in opposition to the supposed better judgment or stronger will of the master, the law usually allows the jury to determine whether he was negligent, or acted in reliance upon the judgment of his master, or out of constrained acquiescence in the rule of obedience which his relation as servant imposed."

Second.  That

"The servant is entitled to rely on the master's performance of his duties."

The juridical theory is that the order, having a natural tendency to throw the servant off his guard, may properly be considered to excuse him from the exercise of the same degree of care as would have been incumbent on him if the case had not involved this factor.  Third.

"That when a servant is suddenly called upon to execute a piece of work in a particular manner, under the eye of his employer, or his employer's representative, a careful observation of the conditions is generally quite impracticable, if the direction is to be carried out with the promptitude which is expected from subordinates."

It follows from what has been said that even if we might have said that the plaintiff did not act with that carefulness which every one is legally bound to exercise, if no order had been given by the master to act just as she did, the giving of such an order prevents us from saying so.

So far as the question of contributory negligence is concerned, the case at bar is also easily distinguished from the case of *Kupkofski v. Spiegel,* supra, because the plaintiff herein was ordered by the master to change her method of feeding the machine from that to which she was accustomed to one of increased and extraordinary danger, and within a short time after such order was given, while operating the machine in accordance therewith, was injured, whereas the injury to the plaintiff in the Michigan case was in no sense the result of the change made by her in obedience to the master's orders in the manner of operating the machine from a comparatively safe process to one conceded to be extremely dangerous. Practically all that has been said concerning the effect of an order from the master is applicable to an assurance of safety given by him, and especially as it affects the question of whether the servant can be charged with contributory negligence; for, inasmuch as the knowledge possessed by the servant is ordinarily inferior to that of the master, the former is justified in relying upon the statement made by the latter as to the extent of the danger, or, as it is very aptly expressed by Mr. Labatt, section 451:

"In view of this disparity of information, an assurance of safety, like a specific order, may be regarded as having had the effect of lulling the servant into a feeling of security and given him good reason to believe that there was no need for the vigilance which he would otherwise have exercised."

We are of the opinion that the case should have been submitted to the jury, and that the trial court erred in sustaining the motion for a nonsuit.

The cause is reversed, and a new trial granted. Costs of this appeal are to be taxed against respondent.

BARTCH, C. J., and McCARTY, J., concur.