GEORGE W. BLAKESLEE v. CHARLES L. ERVIN ET AL.

FILED APRIL 17, 1894. No. 5349.

1. Review. The evidence examined, and *held* sufficient to sustain the verdict.

2. Instructions. Objections to an instruction given by the court on its own motion considered, and *held* that there was no error in giving such instruction.

3. Commission for Sale of Stock: EVIDENCE. Where a party, owner of 260 shares of bank stock, each share being of the value of $100, desired to sell the stock and agreed with a firm in the business of selling real estate and other property that if the firm would find him a purchaser for the stock said firm should receive, as compensation for such services, all of the consideration received for the sale of such stock in excess of the face or par valuation thereof, and the consideration for the sale of the stock was $26,000, the face value, and the seller to retain a dividend then earned of $780, *held*, that this was a sale of the stock for the sum of $780 in excess of the face or par value, and on proof of performance of the services contracted for, the plaintiffs were entitled to recover the above amount.

ERROR from the district court of Dawson county.    Tried below before GASLIN, J.

*E. A. Cook,* for plaintiff in error.

*H. C. May* and *Hamer, Sinclair & Brown, contra.*

HARRISON, J.

This action was commenced by defendants in error in the county court of Dawson county, Nebraska, where they filed the following petition:

"The plaintiffs complain of the defendant and allege that they are partners doing business under the firm name of Ervin & Hammond, and are engaged in the sale of real estate and other property on commission in Dawson county, Nebraska; that on the 10th day of May, 1890, the defendant, being the owner of certain shares of stock in the Dawson County National Bank, a corporation organized and existing under the laws of the United States, applied to the plaintiffs to find a buyer or purchaser therefor, and then and there agreed to give the plaintiffs, as commission therefor, the amount in excess of the face or par value of said stock, for which the same was sold to the purchaser furnished by them; that pursuant to said agreement the plaintiffs furnished purchasers for said stock, and on or about June 1, 1890, the same was sold to them; that the face value of said stock was the sum of twenty-six thousand dollars ($26,000); that the purchase price of said stock, and the amount for which the same was sold, was the sum of twenty-six thousand dollars ($26,000) cash, and the defendant, in addition thereto, to retain and reserve three (3) per cent of said twenty-six thousand dollars ($26,000), amounting to the sum of seven hundred eighty dollars ($780) of the assets of said corporation; that said defendant took and received for said stock from the purchasers as aforesaid said sum of twenty-six thousand dol-

lars ($26,000) in cash, and good solvent promissory notes of the amount and value of the sum of seven hundred eighty dollars ($780); that the said sum of seven hundred eighty dollars ($780) is due and payable to the plaintiffs from the defendant as per said contract made as aforesaid; that notwithstanding the premises aforesaid the defendant has refused, and still refuses, to pay the same, although he has often been requested to do so, to the plaintiffs' damage in the sum of seven hundred eighty dollars ($780.)"

To this petition the plaintiff in error, defendant in the courts below, filed an answer, admitting the partnership of Ervin & Hammond, also admitting that on or about May 10, 1890, he was owner of certain shares of stock in the Dawson County National Bank, and denying each and every other allegation or statement of the petition.

A trial was had of the issues thus presented in the county court, and an appeal taken by the party defeated there to the district court, where no new pleadings were filed, but by agreement of the parties the case was tried to the judge presiding and a jury, on the pleadings filed in the county court. The trial in the district court resulted in a verdict for Ervin & Hammond. Blakeslee filed a motion for a new trial, which was overruled, and judgment rendered on the verdict for Ervin & Hammond. The case is brought here by Blakeslee by petition in error.

The first of the assignments of error urged is that the judgment is not sustained by sufficient evidence. The evidence, we conclude, after a careful examination of it, discloses that Mr. Blakleslee was, on or about May 10, 1890, the owner of, or could control, 260 shares of the stock of the Dawson County National Bank, of the face value of $26,000, or $100 per share, and desired to sell the same; that probably Mr. Leflang, who subsequently purchased it, and who then was understood to have in contemplation the establishment of another bank in Lexington, Dawson county, Nebraska, was approached by Mr.

Blakeslee and asked by him to buy the stock of the Dawson County National Bank, of which he was the owner; that Mr. Ervin, of the real estate firm, after this conversation between Blakeslee and Leflang, went to Mr. Blakeslee and told him he thought he could get him a purchaser for his bank stock, and after some talk between them was finally told by Blakeslee that if he could find him a buyer for the bank stock, he could have all that was received or to be paid for it in excess of its face value, $26,000. During the conversation had by the parties at this time, Mr. Blakeslee was informed by Ervin that Leflang was the probable purchaser whom he then had in view. The evidence further shows that during the month or more following, this interview with Mr. Blakeslee, Ervin was very diligent in laboring with Mr. Leflang, saw him very frequently, went to the Dawson County National Bank and received from Mr. Blakeslee, or from some person ordered by him to deliver it, a statement of the condition of the bank, and took it and exhibited it to Mr. Leflang; that he reported to Mr. Blakeslee often during this time the progress he was making in effecting the sale of the stock; and his arguments with Mr. Leflang in favor of the purchase of it and urging it strenuously, seem to have exercised a very material influence and to have been largely instrumental in inducing him to take the stock, and Mr. Blakeslee knew of this being done by Ervin and accepted the result. Although there is some conflict of testimony on some of the points involved in the above statement, we think it is a fair summary of the determination which would be reached from a careful and impartial consideration of all the evidence introduced; and there is sufficient evidence to sustain the finding that the contract of hiring was made between Mr. Blakeslee and Ervin, and that the work was performed by Ervin and the fruits of it accepted by Blakeslee. This, by well-established rules governing such cases, was sufficient in law to entitle the plaintiff firm to the compensation agreed upon.

(*Potvin v. Curran*, 13 Neb., 303; *Hartley v. Dorr*, 15 Neb.,
451; *Butler v. Kennard*, 23 Neb., 357; *Anderson v. Cox*,
16 Neb., 10; *Rees v. Spruance*, 45 Ill., 308; *Middleton v.
Findla*, 25 Cal., 76.)

This brings us to another branch of the case, viz.,
whether the stock was sold for more than its face value,
$26,000. The evidence was to the effect that there was a
$780 dividend earned, or very nearly so, at the time Mr.
Leflang bought the stock, and all parties agree that Mr.
Blakeslee was to, and did, receive for the stock $26,000, and
according to the terms of the sale was to, and did, receive
the further sum of $780, the dividend.

There is testimony that he received credit on his account
at the bank for this sum before the completion of the sale
of the stock, but it is very clear that the dividend was not
regularly made or declared until several days subsequent
to the time of the transfer of the stock to Leflang, and that
Blakeslee was to have this dividend entered into, and it
was a constituent element and moving and active part of,
the consideration of the contract of sale and purchase be-
tween Mr. Blakeslee and Leflang; and if so, then it was
this much given for the stock in excess of its face or par
value, as clearly as if the like sum had been paid from
Leflang to Blakeslee in money, check, draft, or property,
or in any manner which served to increase the amount of
consideration for the stock to more than its face value.

The only other error assigned is that the court below
erred in giving the fourth paragraph of the instructions
given on its own motion. This instruction is as follows:
" You can find a sum less than the amount claimed if
there is evidence to warrant it, but the suit is on a special
contract of three per cent of $26,000, and I submit to
your careful consideration whether there is evidence to find
any other sum than three per cent claimed." This instruc-
tion, standing alone, is not as definite or clear as it might
or probably should have been, and may be somewhat ob-

jectionable; but when read in connection with the other instructions given to the jury by the court, in which they were in substance told that before the plaintiffs were entitled to recover anything, the jury must believe from a preponderance of the evidence that the contract of employment was made as stated in the petition, and that they had performed the services and found a purchaser for the bank stock, and that it was sold to such purchaser and for more than its face value, we are unable to discover wherein the jury could have been misled by it or the plaintiff in error in any way or manner prejudiced by its being given. Instructions to a jury must be considered together, and if when so construed they state the law applicable to the facts in the particular case correctly, it is sufficient. (*Bartling v. Behrends*, 20 Neb., 211; *Gray v. Farmer*, 19 Neb., 69; *City of Lincoln v. Smith*, 28 Neb., 762.) The judgment of the lower court is

AFFIRMED.