ARCHIE MAXSON, APPELLEE, V. J. I. CASE THRESHING MACHINE COMPANY ET AL., APPELLANTS.

FILED APRIL 23, 1908. No. 15,095.

1. **Master and Servant.** If an agent is given sole charge of the preparation and exhibition of cumbersome and complicated machinery, and calls to his assistance in that occupation one who in good faith enters upon such work, the person thus employed is not a volunteer or trespasser, but for the time being assumes the relation of servant to the master.

2. ————: INJURIES: ASSUMPTION OF RISK: PLEADING. If the assumption of a risk not usually and ordinarily incident to the service is relied on as a defense in an action against the master for negligence, such assumption of risk must be specially pleaded.

3. **Evidence** examined, and found sufficient to warrant the submission of the issues presented to the jury.

4. **Trial:** INSTRUCTIONS. It is not error to refuse to give instructions where the substance thereof is included in instructions given by the court on its own motion.

5. ————: SPECIAL FINDINGS. It is within the discretion of the court to give or refuse to submit to the jury special findings.

6. **The scope of expert evidence** is not restricted to matters of science, art or skill, but extends to any subject in respect to which one may derive by experience special knowledge.

7. **Trial:** INSTRUCTIONS. Mere failure to charge a jury upon a particular proposition of law is not reversible error, unless a suitable instruction has been tendered.

8. **Appeal:** INSTRUCTIONS: HARMLESS ERROR. This court will disregard any error or defect in instructions given or error in the failure or refusal to give instructions requested, where the action of the trial court did not affect the substantial rights of the litigants.

APPEAL from the district court for Thayer county: LESLIE G. HURD, JUDGE.   *Affirmed.*

*C. L. Richards* and *Cary, Upham & Black,* for appellants.

*F. M. Hall, W. E. Goodhue* and *C. C. Marlay, contra.*

ROOT, C.

Plaintiff recovered a judgment against defendants for personal injuries inflicted on him in the loss of his right arm while assisting defendant Thorpe in an attempt to place a belt in position upon a threshing machine. The alleged negligence consists in (1) failure and neglect to instruct plaintiff as to the danger inherent, but not obvious, in the employment he entered; (2) in furnishing a belt that was too short and not intended for that make of machine; (3) because an engineer was not provided for the engine that operated the separator; (4) in attempting to place the belt upon the feeder and cylinder pulleys while the latter was in rapid motion and no one was in charge of the engine.

Viewed in the favorable light plaintiff is entitled to have the evidence considered, because the jurors found for him, the testimony tends to establish that plaintiff had been reared on a farm, but had picked up considerable knowledge as a machinist and had worked in a small machine repair shop in the village of Hebron. His employer was a Seventh Day Adventist, and Maxson was out of work on Saturdays. Defendant corporation had an agent, one Kuhlman, who sold its machines in Hebron. There is nothing in the record to show the scope of Kuhlman's authority, nor does it seem to be material in adjusting the rights of the parties to this litigation. Thorpe was in the employ of the defendant corporation, the J. I. Case Threshing Machine Company, as "salesman and expert operating machinery, and anything pertaining to their work." He exhibited and demonstrated his em-

ployer's machinery in his territory, which comprised some four counties in southern Nebraska. In this branch of work he had complete control, according to his testimony. The evidence pertaining to the scope of Thorpe's work and his authority must be gathered from his testimony, which went in without objections, and from the circumstances attendant upon his duties as appear in the evidence. It seems to have been the purpose of the defendant corporation to exhibit a steam thresher in Hebron on Saturday, May 21, 1904, and to that end it shipped an engine and separator to said city. Plaintiff noticed the outfit, and Friday evening inquired of Kuhlman and his boy concerning the machinery, and was informed it would be exhibited the following day. The boy said help would be needed. Early Saturday morning plaintiff assisted in placing brasses on the engine, and started a fire in the furnace, so that steam was up when Thorpe arrived at 9:15 o'clock in the forenoon. Thorpe at once commenced placing the machinery in condition for display, and made a general statement to the men and boys congregated about the machine, "You boys get out of here now," to which Maxson answered, "Does that mean me?" And in response Thorpe said: "No; I want you to stay here and help me." From thence till the accident Maxson assisted Thorpe, doing what he was directed by said expert to do, placed the engine in position for the big belt, oiled the pulleys, assisted in placing the power belt and blower belt upon their respective wheels and pulleys, attended to the engine when it stopped on center, and waited generally upon Thorpe. The power from the engine operates through a belt which connects with a shaft situated immediately beneath and across the bed, and about midway between the ends of the separator. A belt connects this shaft with one that turns the cylinder, a ponderous affair, weighing 1,100 pounds. The cylinder shaft is five feet and eight inches above the ground, and in addition to carrying the feeder pulley, which is next to the separator, maintains another pulley at the outer extremity of the

shaft, leaving a space of about four inches on the shaft between the pulleys. At the extreme top and end of the separator is a self-feeding attachment which is operated by a belt attached to a pulley upon the feeder shaft and a pulley upon the cylinder shaft. After Thorpe and plaintiff had placed the power belt upon the engine and separator, and connected the cylinder shaft so it was in motion, making some 220 revolutions a minute, Thorpe took a belt so as to connect the cylinder pulley with the one on the feeder shaft. This belt was fifteen feet and four inches in length from end to end, or seven feet and eight inches with the ends connected. Thorpe stood on the top of the separator, and directed plaintiff to place the belt on the revolving cylinder pulley of the cylinder shaft. Plaintiff thereupon stood upon the front wheel of the separator, with his right hand against the body thereof, and beneath the strands of the belt, and with his left hand placed the belt upon the pulley. Thorpe then tried to put the upper end of the belt, which he retained in his hands, upon the feeder pulley, but was unsuccessful, and permitted the belt to sag back so that it became disengaged from the cylinder pulley. Plaintiff then shouted to Thorpe not to pull the belt, but either he was not heard or not heeded. Thorpe tightened the belt. It was pulled from his hands, and in the fraction of a second plaintiff's arm was torn or knocked from his body close to the shoulder. Experts testified that the operation attempted was dangerous, and that plaintiff's position was one of peril. There was testimony tending to prove that the belt used was not adapted to the separator; that it was an old one and too short; and that after the accident Thorpe laced in an extension, and thereafter used the belt. Thorpe explains that the belt was manufactured to be used on the separator without a tightener. This attachment seems to be an improvement adopted about 1904 by the defendant corporation, and consists of a small pulley fixed to a stationary shaft which protrudes from the side of the separator at a point between and in line

with the axes of the feeder and cylinder pulleys. This pulley was arranged so that it might be raised or lowered, and the upper strand of the feeder belt, when the tightener was used, was made to pass under the tightener pulley. The tightener might or might not be used. In the former case is necessitated a belt some inches longer than the other. Thorpe also says that he laced in the extra strip of belting so that he might use the tightener; that the old belt was used without the tightener after the accident and before the noon hour, and during the noon intermission he took the belt off, laced in the extension, and thereafter used the belt with the tightener. There was testimony to the effect that a tightener was not attached to the separator. Thorpe denies employing plaintiff or requesting him to do anything, and denies that plaintiff assisted him at all. Thorpe also says he did not need any assistance in preparing and exhibiting the machinery, and Davis, defendant's expert, says assistance is not necessary or furnished experts engaged in exhibiting threshing machinery. The statements of Thorpe are in many instances contradicted by the testimony of the bystanders, and the evidence given by plaintiff, corroborated.

1. Defendants strenuously insist the testimony does not establish the relation of master and servant between plaintiff and the defendant corporation, and that the court improperly instructed the jury on this point. The court instructed the jurors: "The plaintiff alleges that he was employed by the defendants at the time he received the injury complained of; that is, he was a servant of the defendant J. I. Case Threshing Machine Company. As to this, you are instructed that there is no dispute but that the threshing outfit was owned by the defendant Case company, and was in charge of Thorpe, who was then an employee of the company; and, if you further find it established by a fair preponderance of the evidence that Thorpe's employment and duty was to put the engine and separator in operating condition in order to operate the same for the purposes of exhibition, and in order to carry

out that employment he requested the plaintiff Archie
Maxson to assist him therein, and the said Maxson did
assist him in such work in compliance with said request,
and the said Thorpe gave directions and instructions
from time to time as said work progressed as to what the
said Archie Maxson should do in and about putting the
machinery in order and adjusting the same, and do what-
ever was necessary and required by the defendant Thorpe
in the preparation of said engine and separator for opera-
tion and exhibition, then as a matter of law this would
amount to an employment for the time being for such
purpose and work of the said plaintiff by the defendant
J. I. Case Threshing Machine Company, and the plaintiff
was for the time being a servant of said company; and,
unless you find that he was a servant and so in the employ
of the defendant company, then your verdict should be
for the defendants.  It is not sufficient to entitle him to
recover that he merely show that he officiously and with-
out request or employment volunteered his assistance in
and about putting the machinery in working order, and
while so intermeddling was injured as set forth in the
petition.  On the other hand, it was not absolutely neces-
sary that he should have been employed to work for any
specified time or to receive any specific compensation."

It is claimed the relation of master and servant cannot
be created except with the consent of the master, or by
his express authority, or in special instances where a
servant of the master without express authority is com-
pelled from necessity or in some exigency to secure as-
sistance, and that the testimony does not bring plaintiff
within any of said rules, nor the instruction properly
state the law in this regard to the jury.  We consider
both objections together.  It may be conceded that the
master owes no duty as master to an officious intermed-
dler who volunteers his services without an invitation ex-
press or implied from the master, but this is not the case.
Plaintiff may have been, and likely was, a volunteer in all
that was done before Thorpe arrived to take charge of

the machine, although it was not from a spirit of meddling that he acted, but only to secure employment from the man seemingly in authority. Subsequent to Thorpe's statement that he wanted the plaintiff to remain and help, we think he came within the reasoning of Mr. Justice Weaver in *Aga v. Harbach*, 127 Ia. 144, 109 Am. St. Rep. 377: "While the master owes no duty to the intermeddler who officiously interferes and undertakes to perform services without request or employment, and while some courts are inclined to put in the same category those who perform services at the request or order of a servant having no general authority to employ or discharge assistants, the general consensus of opinion seems to be that one who in good faith enters upon the master's work at the request of a servant in apparent charge of such work is not a trespasser, but assumes for the time being the relation of a servant. As such servant, he occupies the same relation, and becomes subject to the same rules; including the operation of the fellow-servant rule, as do those who are directly employed by the master, even though he may not be entitled to recover wages." *Johnson v. Ashland Water Co.*, 71 Wis. 553, 5 Am. St. Rep. 243; *Barstow v. Old Colony R. Co.*, 143 Mass. 535; *Georgia P. R. Co. v. Propst*, 83 Ala. 518, 3 So. 764; *Newport News & M. R. Co. v. Carroll*, 31 S. W. (Ky.) 132.

Defendants have collated many authorities to sustain their position. As might be expected, each case presents the facts peculiar to its history, and not one parallels the instant one. *Conkey v. Bucherer*, 84 Ill. App. 633, it was insisted on the argument is directly in point. In that case a wagon broke down, and it was necessary to place a scantling beneath the broken axle and fasten it upon the one intact. A stranger volunteered to go under the broken wagon and fasten the scantling, and while engaged in that undertaking the team attached to the wrecked vehicle ran away, injuring the volunteer. A fellow teamster employed by the master of the driver of the wrecked wagon was standing by, and the court held there

was no such necessity or exigency as would justify the volunteer doing what he did on the assumption that he was becoming the servant of the teamster's master.  The wagon was a simple contrivance not likely to break down, and easily handled by the teamster in any event.  Still other cases refer to an engineer, a brakeman or the conductor of a railway train requesting an individual to assist in switching cars, or controlling the brakes attached to them.  In those cases it might not be out of the way to consider the usual course of business in the operating of railways so notorious as to be known to a considerable degree by all persons; that the work of switching or braking requires skill to a degree; that trainmen are not authorized to employ assistance; and that they are in easy telegraphic communication with their immediate superiors who could extend authority if more help was necessary or convenient in handling the cars or train. In the instant case the master was a corporation resident in a distant state, the machinery was complex, and the agent who had sole charge and control thereof came late in the forenoon of the day, and was hurrying to place it in condition for exhibition.  Under those circumstances, it seems reasonable to believe a man seeking employment would have a right to rely on the expert's authority to employ assistance.  It also seems reasonable to hold that the defendant corporation would be charged with notice of the fact that for the advancement of its own interests its expert in sole charge of the machinery at times ought to and might employ assistance.  On the argument it was admitted that, if it became necessary to move the machinery, the expert might employ assistance, because the necessity would then arise.  But we think the determination of the necessity would be largely confided to the expert and agent, and that the corporation cannot be heard to say had Thorpe employed a teamster to move the machine it would have been the teamster's master, but such relation could not be created in the instant case.  We do not find a scintilla of evidence in the record given

by any officer or agent in control of Thorpe that he did not have authority to employ plaintiff, or that Thorpe had not been in the habit of employing assistance in such cases. It has been said that one known to be an agent is presumed to be acting within the scope of his authority. *Austrian & Co. v. Springer,* 94 Mich. 343, 34 Am. St. Rep. 350. We are satisfied the instruction referred to is not erroneous in submitting the issue of employment to the jurors, and that the testimony in the record will support a finding that plaintiff was the servant of the J. I. Case Threshing Machine Company at the time he was injured.

2. It is insisted that the dangers incident to the service plaintiff performed were obvious, and that he ought in reason to have comprehended and avoided them. We cannot say as a matter of law that the dangers were obvious to an unskilled workman. Plaintiff testified he did not know or understand the dangers pertaining to the work, and that he had never assisted in placing a belt upon the pulleys of a threshing machine. The court in its fifth instruction informed the jurors "that an employee assumes all the risk arising from the ordinary and necessary dangers connected with his business or employment in which he engages, and assumes the risk arising from the dangerous and unsafe condition of premises or machinery and apparatus wherein or in connection with which his labor is to be performed, when the risks and conditions are known to him, or are apparent and obvious to persons of ordinary experience and understanding." In *Pullman Palace Car Co. v. Harkins,* 55 Fed. 932, it was held that experts might properly testify to dangers lurking in the operation of shafting and belts in much the same condition and relation to each other as in the instant case. Experts are not permitted to testify to conditions that are "apparent and obvious to persons of ordinary understanding." Defendants, as well as plaintiff, interrogated experts upon the identical point, and the court did not err in refusing to instruct the jurors

or in not holding that the perils were plain and obvious,
but properly submitted that issue to the triers of fact.
As to dangers other than those that could be discovered
from observation by a person of ordinary intelligence,
defendants cannot complain, because they did not plead
assumption of any specific risk, and therefore are con-
fined to patent dangers. *Union Stock Yards Co. v. Good-
win*, 57 Neb. 138; *Evans Laundry Co. v. Crawford*, 67
Neb. 153.

3. Defendants complain of the seventh instruction,
which is as follows: "The jury are instructed that it is
the duty of the master to inspect and investigate risks
to which its servant is exposed, and the servant may
rely upon the master performing that duty, and if in
this case the plaintiff proceeded under the orders of
Thorpe as the representative of the said defendant J. I.
Case Threshing Machine Company in performing the act
of assisting in putting on the feeder belt, and in so doing
was exposed to unusual danger and the injury resulting
therefrom, then the J. I. Case Threshing Machine Com-
pany would be liable for such injury to the said plain-
tiff, unless the risk of the act of assisting in putting said
feeder belt on while the cylinder pulley was in motion
was to the plaintiff so apparent that a man of ordinary
prudence situated as he was would not have undertaken
it." It is said that the master's duty to investigate risks
is relative, and not absolute; that the instruction ignores
the issue of the relation of master and servant, ig-
nores the issue of defendant's alleged negligence, and
also of plaintiff's contributory negligence, limits the issue
solely to whether the risk of putting the feeder belt on
the revolving cylinder pulley was apparent to a man of
ordinary prudence, and ignores the presumption that
plaintiff had sufficient understanding to comprehend the
dangers incident to his employment. The instruction
is not faultless, but we think, when it is read in con-
nection with the other instructions given by the court,
it cannot be said to be prejudicially erroneous to de-

fendants. Defendants could not have been prejudiced by stating that it was the duty of the master to inspect risks to which his servant may be exposed, because the judge does not say the failure to do so in the instant case gave plaintiff any cause for action. Later in the instruction he informs the jurors that defendants would not be liable if the risk was obvious, and also advises them that, if acting under the orders of Thorpe, the vice-principal, plaintiff was exposed to unusual danger and he was injured thereby, there might be a recovery. In the third instruction the jurors were told plaintiff could not recover unless he established the relation of master and servant between the defendants and himself. In the same instruction and the fifth instruction the grounds for recovery are explicitly stated. In the second instruction the jurors are informed that the burden of proof is on plaintiff to make out his case by a preponderance of the evidence, and in the fifth instruction they are also told plaintiff must show his injuries did not result from his own negligence or carelessness. As to the failure to include a statement concerning the presumption that plaintiff knew of the dangers referred to, defendants did not ask an instruction on this point, and they ought not now to complain. Section 145 of the code directs: "The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." The application of this positive mandate of the law compels us to ignore the peculiarities and alleged error in this instruction. We do not commend the instruction, but much of its crudeness is cured by reference to other instructions given. Instructions will be read together, and not detached from each other. *Stein v. Vannice*, 44 Neb. 132; *Blakeslee v. Ervin*, 40 Neb. 130; *Hoffine v. Ewings*, 60 Neb. 729.

4. Defendants claim the court should have withdrawn from the jurors the allegation that the belt was too short.

It would have been reversible error to have done so, as there is ample evidence in the record to sustain an affirmative finding on that issue, if Thorpe be disbelieved and plaintiff and his witnesses credited with telling the truth. To the further claim that it was negligence to attempt to put on the feeder belt with the machinery in motion and no one in charge of the engine, it may be said the evidence upon this issue was sufficient, in our judgment, to go to the jury.

5. As to the sixty-first, sixty-second and sixty-third assignments of error, they relate to the court's refusal to instruct the jurors, as requested by defendants, that if in the doing of certain things plaintiff did not exercise ordinary care and prudence, and that omission contributed proximately to his injury, he could not recover. The court had in effect instructed the jurors that, if plaintiff was negligent or careless, he could not recover. It would seem defendants ought not to ask more.

6. The court did not abuse its discretion in declining to submit to the jury special findings, as requested by defendants. *Floaten v. Ferrell*, 24 Neb. 347; *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb. 356; *Hedrick v. Strauss*, 42 Neb. 485; *Reed v. McRill*, 41 Neb. 206; *American Fire Ins. Co. v. Landfare*, 56 Neb. 482.

7. Exception is taken to the ruling of the court admitting the testimony of Shaw and White, to the effect that it was dangerous to undertake to put a belt upon the cylinder pulley and feeder pulley while the former was in motion, and that it was dangerous to stand in the position assumed by plaintiff while assisting Thorpe with the belt, and that it was dangerous to stand in the near vicinity of the cylinder pulley while it was in motion and the feeder belt was being handled as the testimony shows it was manipulated in the instant case. Shaw had operated threshing machines for fourteen years, was conversant with their operation, and knew about the construction and operation of the J. I. Case machines. White had operated different kinds of threshing machines,

including the Case, for six years and was familiar with
the methods and manner of gearing up, belting and un-
belting those machines.    Both witnesses testified the
cylinder pulley should properly be at rest when the belt
therefrom to the feeder pulley was being placed in posi-
tion; that the work plaintiff was directed by Thorpe to
do was dangerous, and under the circumstances testified
to by plaintiff and some of his witnesses it was danger-
ous to life and' limb for any one to stand within the
radius of the belt should it slip from the operator's hands
and commence to wrap around the cylinder shaft.    De-
fendant's witnesses, on the other hand, stated that one
in Thorpe's position could with safety to the operator
place the belt under the cylinder pulley, and from thence
run it over the feeder pulley, and whereas with a ma-
chine that had been in use the belts were put in position
upon the various pulleys before the machine was started
in motion, that with new machines like the one on ex-
hibition the parts of the machine should be worked out
one at a time, and first one and then another belt put
in place, and that part of the machine worked for a time,
and then another.    Davis, defendant's expert, said it
was dangerous to connect the cylinder pulley with the
feeder pulley when the former was in rapid motion, but
thought 220 revolutions a minute was not rapid motion.

While the admission of incompetent evidence offered
by one party will not make admissible incompetent evi-
dence offered by the other litigant, yet the record dis-
closes that defendants, as well as plaintiff, construed
the subject· one proper for experts to explain. "The
scope of expert evidence is not restricted to matters
of science, art or skill, but extends to any subject in re-
spect to which one may derive by experience special and
peculiar knowledge." *Zarnik v. Reiss Coal Co.,* 133 Wis.
290.    The testimony falls within the principles discussed
in *Baltimore & O. R. Co. v. Schultz,* 43 Ohio St. 270, and
approved by us in *Read v. Valley Land & Cattle Co.,* 66
Neb. 423.    The danger lurking in the handling of the

belt under circumstances detailed by plaintiff was not patent to such an extent as inexperienced persons upon inspection could appreciate. In *Pullman Palace Car Co. v. Harkins*, 55 Fed. 932, an action to recover for the death of an employee who was caught in a rapidly revolving shaft, it was held proper to permit one having practical experience to testify that the revolving shaft was dangerous machinery; as one witness said, "A harmless looking thing to an ignorant man." *Transportation Line v. Hope*, 95 U. S. 297; *Alabama M. R. Co. v. Jones*, 114 Ala. 519, 21 So. 507; *Garberg v. Samuels*, 27 R. I. 359; *Zarnik v. Reiss Coal Co., supra*. The testimony did not go to the ultimate fact, which was solely for the jurors' determination, and the court properly admitted it for their assistance. Some of the questions were leading, and the court would not have committed error had it sustained objections thereto. Probably the jurors would have received as much assistance had the questions been couched in somewhat different form, but the case ought not to be reversed because of the admission of the testimony referred to.

8. Defendant corporation requested, and the court refused to give, an instruction that, "to entitle the plaintiff to recover, he must not only establish by a preponderance of the evidence that his injury was the natural consequence of the act or omission of the defendant Thorpe, but it must also appear, under all the circumstances, defendant Thorpe ought reasonably to have foreseen that injury might result from his (Thorpe's) act of omission." This instruction was faulty in at least ignoring the alleged negligence of the corporation defendant in furnishing a belt not adapted to the threshing machine on exhibition. If improper appliances were negligently furnished plaintiff, and he was, without negligence on his part, injured thereby, the fact that Thorpe might not, under all the circumstances of the case, have reasonably anticipated injury to plaintiff would not absolve the company from responding in damages in this case. Thorpe,

it will be observed, did not ask this instruction. It is
the established law in this court that mere failure to
charge the jury upon a particular proposition of law
is not reversible error, unless a suitable instruction has
been tendered. *Johnson v. State*, 53 Neb. 103; *Reynolds
v. State*, 53 Neb. 761. Waiving the suggested defect in
this instruction, it will be observed that the court had
instructed the jury that the fact plaintiff was injured
would not establish defendant's negligence; that the in-
jury must have been the proximate result of defendant's
negligence; and that, "before you can find the defendants
liable to the plaintiff in damages for the injury complained
of, you must find that the defendants were chargeable
with some one or more of the acts of negligence charged
in the petition, and you must also find that such negli-
gence was the proximate cause of plaintiff's injury." The
court also gave an abstract definition of negligence, and
properly instructed the jury that the burden of proof
was on the plaintiff. The pleadings were sent out with
the jury for consultation in their deliberations. In its
answer the corporation defendant admitted that "Thorpe
was well experienced in all matters pertaining to the
management, control, operation and running of the thresh-
ing machine." Thorpe therefore ought to have appre-
ciated the danger to which plaintiff was exposed, and the
jurors could apply the evidence just as certainly without
as with the instruction refused. The only possible in-
tervening negligence suggested by defendants was the
alleged contributory negligence of plaintiff, and that
phase of the case was fully covered in the fifth instruc-
tion given by the court. We do not think the jurors
were permitted to go astray by the lack of this instruc-
tion, nor that, if it had been given, the verdict would
have been other than it was. The error assigned is not
well taken. Code, section 145.

This case seems to have been skilfully tried by oppos-
ing counsel. The trial court was fair in its rulings on
the admission and exclusion of evidence, and fairly sub-

mitted the questions of fact to the jury. The verdict, $2,500, is not excessive, and we conclude the judgment of the district court should be affirmed, and we so recommend.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.