PAULINE J. SEELY v. ROBERT C. TENNANT and Others.[1]

May 29, 1908.

Nos. 15,645—(92).

**Fencing Machinery.**

The evidence does not conclusively prove that appellants were guilty of negligence in failing to guard certain machinery in their mill.

**Contributory Negligence.**

It does not conclusively appear from the evidence that respondent's intestate was guilty of contributory negligence, or assumed the risks while attempting to put a belt on a certain pulley.

**New Trial.**

Order granting a new trial upon the ground that the evidence did not support the verdict is affirmed.

Action in the district court for Wabasha county by the administratrix of the estate of Harry A. Seely, deceased, to recover $5,000 for his death. The case was tried before Snow, J., and a jury which rendered a verdict in favor of plaintiff for $1,500. From an order grant-

1 Reported in 116 N. W. 648.

ing defendants' motion for a new trial and denying their motion for judgment notwithstanding the verdict, they appealed. Affirmed.

*John W. Murdoch* and *Brown, Abbott & Somsen,* for appellants. *Charles G. Laybourn,* for respondent.

LEWIS, J.

Harry A. Seely, deceased, was employed by appellants as a helper and general utility man in their flourmill. The complaint alleges that in pursuance of his duties he was required to go upon a certain platform, or staging, elevated about seven feet above the floor in the mill, in order to throw a belt upon a certain pulley located on a shaft running above and in the vicinity of the platform, in order to set the machinery of the mill in operation for the purpose of mixing the grain in the bins; that while so engaged in the performance of his duty he was caught on the shaft, and violently thrown against the machinery and adjacent parts of the building, and instantly killed; that his death was caused wholly by negligence and carelessness of appellants in their failure to furnish safe, suitable, and proper appliances with which to do the work, and through their omission and failure to furnish a safe, suitable, and proper place in which to work.

The trial court submitted four separate and special questions to the jury:

"(1) State the particular way or manner in which Harry A. Seely came to his death. Ans. Harry A. Seely came to his death by being caught on an unprotected running shaft while endeavoring to put a belt on a pulley.

(2) Was the death of Harry A. Seely proximately caused by negligence on the part of the defendants? Ans. Yes.

(3) If the second question be answered in the affirmative, then state in what such negligence consisted. Ans. By having an unprotected shaft and pulley and an unsafe runway.

(4) Was the deceased, Harry A. Seely, himself guilty of negligence directly contributing to his injuries and death? Ans. No."

The jury returned a verdict of $1,500 in favor of the administratrix, respondent. Appellants moved for judgment notwithstanding the verdict and for a new trial upon the ground that the verdict was not justified by the evidence, was contrary to law, and for errors in law occur-

ring at the trial and excepted to by appellants. The court denied the motion for judgment notwithstanding the verdict, but granted a new trial, which order was appealed from.

The order of the trial court must be sustained, unless it conclusively appears from the evidence that appellants were not negligent, as charged in the complaint, or unless it conclusively appears from the evidence that decedent was guilty of contributory negligence or assumed the risks of his employment. In an elaborate memorandum attached to the order the learned trial court expressed the opinion that the third special question submitted to the jury was not satisfactorily answered. The court was of opinion that there was no evidence to indicate that the platform upon which Seely had to walk when adjusting the belt was unsafe, and that according to the evidence it was not practicable to cover or guard the pulley so as to remove all danger in putting on the belt. The court was of opinion that neither the set of screws inside the pulley, nor the coupling, five feet or more distant, nor anything peculiar in the condition of the surface of the shaft, played any part in the accident. It is evident, from a reading of the memorandum and order together, that the learned trial court granted a new trial upon the ground that the evidence was not sufficient to support the verdict; that is to say, the jury may have based their conclusion upon the fact that the pulley itself was not guarded, or that the platform was unsafe, in which case the verdict was not supported by the evidence. The result illustrates the danger of submitting to a jury, in cases of this character, special questions calling for specific answers with reference to matters which may naturally be included in and disposed of by a general verdict.

The shaft in question was the main shaft which propelled the machinery of the mill, and revolved at the rate of about two hundred twenty revolutions a minute. It ran parallel with the platform, about four feet above and so near to it that a person walking on the platform might come in contact with it. A shaft of this character is included within the express terms of the statute. Section 1813, R. L. 1905. The pulley located upon this shaft was about fourteen inches in diameter. The belt was about twenty three feet long, and weighed about one hundred pounds, and ran from the pulley down to a lower part of the mill. When necessary to start certain machinery, it was the

duty of Seely to go upon the platform and put the belt on the pulley. There was no belt shifter or apparatus for that purpose, and it was necessary to take hold of the belt with the hands, start it upon the rapidly revolving pulley, and crowd it into place. It had been customary to use a pair of mittens in handling the belt, and on some occasions the men had made use of a bran sack, which they wrapped around their hands and arms in order to protect themselves from being chafed or burned by the belt while placing it on the pulley. At the opposite end of the belt there was an adjustment known as a "belt tightener," the purpose of which was to tighten the belt after it had been put on the pulley, and thus cause the lower shaft to revolve and carry its load. It was not possible to place the belt upon the upper shaft unless the tightener below was loosened to permit a certain amount of play. We have no hesitation in declaring that the facts presented a question for the jury to determine whether or not appellants were guilty of negligence in failing to guard the upper shaft and in failing to supply a belt shifter, or some means of adjusting the belt without making it necessary for the operative to take hold of it with his hands.

The main argument, however, upon this appeal, was directed to the question of contributory negligence and assumption of risk. As to the former question, it does not conclusively appear from the evidence that Seely was negligent in coming in contact with the shaft. He was not caught in the pulley itself, nor was he caught by the knuckle or coupling located some four or five feet distant from the pulley. It is conceded that the surface of the shaft was smooth, and hence there were no projections upon which he might inadvertently have been caught; but he was found dead soon after the accident, with his right arm wrapped about the shaft and fastened to it by means of a bran sack, at a point about half way between the pulley and the coupling. Hence the inference is inevitable that he had taken a bran sack and wrapped it around his hand and arm for the purpose of protecting his hand when taking hold of the belt, and that in passing along the shaft, in some manner not definitely disclosed, either his clothing or the sack came in contact with, and was caught and wound around, the shaft. His duties were attended with considerable danger, but he must be presumed to have been in the exercise of ordinary care. Whether the accident was the result of his own carelessness, or the result of an in-

advertence on his part while exercising ordinary care in the performance of his duties, were questions which the jury were required to solve. It was first announced in Anderson v. C. N. Nelson Lumber Co., 67 Minn. 79, 69 N. W. 630, that the duty of guarding machinery did not change the rule of law as to contributory negligence and assumption of risk. That decision has been repeatedly followed, and by this time ought to be accepted as the settled rule of law of this state.

We cannot agree with appellant that it conclusively appears from the evidence that the decedent assumed the risks of his employment. It is true that he had been at work in the mill for about eleven months; that, off and on, he had been performing the duties of adjusting the belt, and, so far as ordinary observation could convey knowledge to him, he knew the location of the shaft, the fact that it was revolving rapidly, and the difficulty of adjusting the belt; but that he understood and appreciated the risk attending the use of the bran sack does not conclusively appear. The rapidly revolving shaft was a dangerous instrumentality. In adjusting the belt it had been the practice to use bran sacks; but that particular method had not been in use so long, or persistently, as to make it appear certain that Seely assumed that method as a part of his work. It is claimed by appellant that it was much easier to adjust the belt after the tightener was put in, in order to allow for more play, and that after that time it was not necessary or customary to use the sack. There is some evidence tending to show that, even after the tightener was put in, it was difficult to handle the heavy belt and make it remain on the revolving pulley, and that it could not be done without taking hold of it in some way, and that the danger of burning the hands continued after the belt tightener was put in.

Affirmed.