Mary E. McCreery, Administratrix of the Estate of William D. McCreery, Deceased, v. Union Roofing & Manufacturing Company, Appellant.

Master and servant: DUTY OF MASTER TO PROVIDE SAFETY DEVICES:
1 STATUTES. By the terms of the Factory Act of the 29th General Assembly, a manufacturer is required to provide belt shifters, or other mechanical contrivances, to throw belts off and on pulleys, irrespective of the practicability of providing loose pulleys.

Same. A devise consisting of a frame and pulley known as an
2 "idler," located in another building and used solely to increase the power transmitted to the power shaft by a certain belt, is not a belt shifter or other mechanical contrivance to throw belts off and on pulleys, such as manufacturers are required by the Factory Act, to furnish.

Same: PROXIMATE CAUSE. Where the use of safety appliances required by the Factory Act, would have made the operation of the
3 machinery by which deceased was injured much safer, a finding that failure to provide such appliances was the proximate cause of the injury was justified.

Master and servant: CONCURRENT NEGLIGENCE: LIABILITY OF MASTER.
4 Where a manufacturer is negligent in failing to provide proper safety appliances, the concurrent negligence of a co-employee in the use of those appliances furnished will not relieve the employer from liability for a resulting injury to a workman.

**Contributory Negligence:** ASSUMPTION OF RISK.   Neither contributory negligence nor assumption of risk can be established where an employee, neither a machinist nor employed to operate machinery, was caught by a belt and killed while attempting to start the machine by pulling upon the belt, without proof that he appreciated the danger incident to his act.

**Evidence:** SAFETY APPLIANCES.   Where witnesses have shown themselves familiar with the subject it is proper to allow them to testify concerning the practicability of using loose pulleys, and as to the sufficiency of a particular appliance as a safety device.

*Appeal from Clinton District Court.*—Hon. A. P. Barker, Judge.

THURSDAY, FEBRUARY 18, 1909.

REHEARING DENIED FRIDAY, JULY 2, 1909.

ACTION to recover damages to the estate of plaintiff's intestate resulting from injuries causing his death, alleged to have been due to the negligence of the defendant.   There was a verdict for plaintiff, and defendant appeals.—*Affirmed.*

*Ellis & McCoy,* for appellant.

*C. H. George, Wolfe & Wolfe,* and *C. M. Thorn,* for appellee.

McClain, J.—Plaintiff's intestate was in defendant's employ about its paper mill, engaged in picking and otherwise preparing rags to be fed through two rag cutting machines, and it appears that one of his duties as such employee was to assist, with other employees, in starting up the machines after they had been stopped by clogging, or for the purpose of being cleaned.   These two rag cutting machines were located in a small building or annex, which was separated by the distance of at least thirty feet from

the main building of defendant, and the machines were operated by belts connecting them with a shaft overhead furnishing the power, which shaft came from the main building, where it was connected with the motive power by means of what is called a "quarter belt." To give this belt greater effectiveness in communicating the power to the shaft an appliance designated as an "idler" was used, consisting of a pulley on a frame which could be thrown against the quarter belt, and, by means of a weight held against it, with such force as to increase the effectiveness of the power in causing the shaft to revolve. Without the use of the idler the quarter belt transmitted sufficient power to run the machines when not cutting rags, but the machines could not be caused to perform the work for which they were intended without the use of the idler. Just prior to the accident the quarter belt had been off the pulley on the shaft, and the machines had been standing still while being cleaned or adjusted or otherwise prepared for work. Intestate and others had been called in to assist in starting the machines, which it was customary to do by pulling on the belts connecting them with the power shaft. One Lieghty, who was in charge of the machines, and whose business it was to cause them to be started or stopped by the application or removal of the power transmitted by the quarter belt in the main building, adjusted that belt to the pulley on the power shaft, and then came back to the room where the machines were situated, and directed intestate and others to start the machines, as the quarter belt running over the pulley connecting it with the power shaft which had not yet started was "burning." Intestate, in accordance with the method which had previously been used to start the machines, took hold of the belt of one of said machines for the purpose of pulling thereon, when the power shaft commenced to revolve rapidly, and by the movement of the belt which intestate was holding he was drawn up to the ceiling, and his head was crushed between

the pulley and wall, after which he fell to the floor and almost instantly expired.

Various forms of negligence are charged in plaintiff's petition. But .one of these was submitted to the jury, which was alleged negligence in not having any safe mechanical contrivance for throwing off belts from pulleys, in the absence of belt shifters or loose pulleys in connection with the rag cutting machines, and the jury was directed to consider whether any such safe mechanical contrivance was provided, and, if not, whether it was possible to provide such machinery with loose pulleys. The court further told the jury that the only device used by way of a safety appliance was the idler or belt tightener in connection with the quarter belt in the main building, and left it to the jury to say whether or not this idler did take the place of loose pulleys and belt shifters, and effectively did the work for which they were required. The verdict of the jury for the plaintiff negatived the sufficiency of the idler for the purpose suggested, and indicated the jury's conclusion that a safe mechanical contrivance for throwing the belt from the pulleys was practicable, and the sufficiency of the evidence to support such findings is the principal question presented on the appeal.

By the provisions of Factory Act (Acts 29th General Assembly, chapter 149; Code Supp. 1907, section 4999a2) it is the duty of the owner of any manufacturing or other

1. MASTER AND SERVANT: duty of master to provide safety devices: statutes.

establishment where machinery is used, to furnish "belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and wherever possible, machinery therein shall be provided with loose pulleys." It is not questioned that failure to comply with the provisions of this statute constitutes negligence, and the question is whether there was any evidence tending to show failure to comply with the statute on the part of the defendant which proximately caused or contributed to

the injury to intestate.  There is a conflict in the evidence as to whether loose pulleys were practicable in the operation of this machinery, but there was evidence from which the jury might properly have found that they were practicable, and there was also evidence from which the jury might properly have found that, without loose pulleys, belt shifters might have been provided to throw the belt off the pulleys through which power was transmitted from the shaft to the machines; but it is contended for the appellant that there was no evidence to show that the idler used in connection with the quarter belt was not a sufficient safety appliance under the statute.  It is to be noticed, however, that the requirement of the statute is absolute as to belt shifters, or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, irrespective of the question of the practicability of providing loose pulleys.  Such belt shifters were not provided, and there was a plain failure by defendant to comply with the requirement of the statute.

The idler used in the main building in connection with the quarter belt was not a contrivance for the purpose of throwing belts on and off pulleys.  Its sole purpose was to increase the power which should be transmitted to the power shaft by the quarter belt.  Some power was transmitted when the idler was not used, and the jury was not therefore required under the evidence to find, and could not have found, that the idler was such a contrivance as required by the statute.  As against any possible argument that the failure to provide a belt shifter was not the proximate cause of the injury to intestate, inasmuch as the idler served practically the same purpose, it is sufficient to say that a contrivance, which could be used only by proceeding to another building, and which had relation to the transmission of power to the power shaft, and not to the transmission of power from the power shaft to the machinery where the

2. Same.

accident occurred, could not be equivalent in its very nature to an appliance for starting the machine itself.

It is further urged that belt shifters would not have obviated the necessity for pulling on the belts of the cutting machines to start them, inasmuch as when they were
**3. Same: proximate cause.**
clogged they would not start, even after full power had been applied to the power shaft, unless some additional force was used by pulling on the belts on the cutting machines; but we find no force in this argument. If loose pulleys or belt shifting appliances had been provided in connection with the cutting machines, then full power could have been applied to the power shaft without any power being transmitted to the machines, and then, by the shifting appliance in connection with loose pulleys, or otherwise, this power could have been transmitted directly to the machines, and it does not appear that they could not thus have been started without pulling on the belts. In other words, the use of the safety appliances required by the statute would plainly have made much safer the operation in connection with which intestate was injured, and the jury was justified in finding that the failure to provide such safety appliances was the proximate cause of the injury to intestate.

If the defendant was at fault in not providing proper safety appliances, it was wholly immaterial that Lieghty, as co-employee of intestate, was negligent in the use of the
**4. Master and servant: concurrent negligence: liability of master.**
appliances provided. Mere concurrent negligence of another with the negligence of the employer will not relieve the latter from liability. *Harvey v. City of Clarinda,* 111 Iowa, 528; *Vyse v. Chicago, B. & Q. R. Co.,* 126 Iowa, 90; *Palmer v. Cedar Rapids & M. C. R. Co.,* 124 Iowa, 424; *Gardner v. Waterloo Cream Separator Co.,* 134 Iowa, 6. And this has been expressly held with reference to the contributory negligence of a co-employee. *Klaffke v. Bettendorf Axle Co.,* 125 Iowa, 223.

The evidence relied upon as tending to show assumption of risk and contributory negligence on the part of intestate is not such as to have warranted the taking of the case from the jury on either ground. So far as this case is concerned, the question of burden of proof not being involved, assumption of risk and contributory negligence [as is frequently the case—see *Sutton v. Des Moines Bakery Co.*, 135 Iowa, 390; *Tuckett v. American Steam, etc., Laundry Co.*, 30 Utah, 273, (84 Pac. 500, 4 L. R. A. [N. S.] 990, 116 Am. St. Rep. 832)] rest on the same state of facts, and neither was made out without evidence that the intestate appreciated the danger incident to the act of pulling upon the belt to start the machine. *Wilder v. Great Western C. Co.*, 130 Iowa, 263; *Tuckett v. American Steam, etc., Laundry Co., supra; Seely v. Tennant*, 104 Minn. 354 (116 N. W. 648); *Brandon v. Texarkana & Ft. Smith R. Co.* (Tex. Civ. App.) 113 S. W. 968; *Maxson v. J. I. Case Threshing Co.*, 81 Neb. 546 (116 N. W. 281, 16 L. R. A. (N. S.) 963). Intestate was not a machinist, nor was he employed for the purpose of operating this machinery. So far as the machinery was concerned, he was an unskilled workman, and was acting under an emergency. It would not do to say, therefore, that as matter of law he should have refused to perform the services required of him, on the ground that the danger was so obvious that no reasonable person would have undertaken to perform such services at the direction of Lieghty, who, so far as the management of the machinery was concerned, was his superior.

*5. Cotributory negligence: assumption of risk.*

Some objection is made to the introduction of evidence as to the practicability of using loose pulleys, and as to the sufficiency of the idler in the main building as a safety appliance. We see no merit in these objections. The competency of a witness to testify to matters of this kind is largely within the discretion of the trial court, and these witnesses

*6. Evidence: safety appliances.*

showed such familiarity with the subject inquired about that their competency to testify can not well be questioned. *Maxson v. J. I. Case Threshing Co.*, 81 Neb. 546 (116 N. W. 281, 16 L. R. A. (N. S.) 963).

It is admitted in argument that if there was sufficient evidence to take the case to the jury, the instructions of the court were not erroneous. Finding no error in the record, the judgment is *affirmed*.