IN RE ESTATE OF JOHN J. LYELL.
FRANK DAFOE, PROPONENT, v. LUCIUS L. LYELL ET AL., CONTESTANTS, APPELLEES: EVERETT ERNST ET AL., APPELLANTS.

FILED APRIL 27, 1928. No. 25789.

*Lewis C. Westwood,* for appellants.

*Burkett, Wilson, Brown & Wilson, Jay C. Moore, Edgar Ferneau, Ernest F. Armstrong* and *Al. N. Dafoe, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and HOWELL, JJ., and LANDIS, District Judge.

GOOD, J.

This proceeding originated in the county court of Johnson county, seeking the probate of an instrument purporting to be the last will of John J. Lyell, who departed this life on the 17th day of July, 1925, leaving him surviving three adult children. The instrument was proposed for probate by the person therein named as executor. The three children of decedent (hereinafter designated as contestants) filed objections to the probate of the instrument, on the grounds that it was not executed in the manner prescribed by statute; that it was procured by undue influence; and that decedent was incompetent at the time to make and execute a will. From an order and decree of the county court finding that the instrument was the will of decedent

and entitled to probate, the contestants appealed to the district court. After the evidence was all adduced, the trial court submitted to the jury one question only: Whether decedent possessed testamentary capacity at the time the instrument was executed. The jury found for contestants, and the court entered a judgment on the verdict, denying the instrument probate. The case is brought to this court by the guardian *ad litem,* representing the children of the contestants, who were beneficiaries named in the instrument.

The instrument in question was executed on the 10th day of July, 1925, seven days before the death of Mr. Lyell. By its terms he bequeathed and devised to Frank Dafoe, named in the instrument as executor and trustee, the sum of $24,000; $7,000 to be held in trust and the income therefrom paid to Alonzo Lyell (one of the contestants) and his wife, so long as they both should live, and, upon the death of Alonzo and his wife, the trustee to pay the principal of the $7,000 to the lawfully begotten issue of said Alonzo and his wife. A further sum of $9,000 was devised in trust to Dafoe, to be by him invested and the income therefrom paid to Rua F. Ernst (one of the contestants) so long as she should live, and, upon her death, the principal to be paid to her lawfully begotten issue. A third bequest to the trustee was an $8,000 mortgage, owned by the decedent, in which Lucius L. Lyell (one of the contestants) and his wife were mortgagors, and which provided that he should not pay any interest upon the mortgage; that it should be kept alive so long as he should live, and that at the death of Lucius and his wife the $8,000 mortgage, or renewal thereof, should be collected and the proceeds paid to the issue of Lucius. Another clause devised the remainder of his estate to his three children in equal shares. It is stated in one of the briefs that decedent left an estate of the value of $27,000. We find nothing in the record from which to determine the value of the estate, other than the provisions of the alleged will might indicate.

The first error assigned for reversal of the judgment

is that the trial court, over objection, permitted one of the contestants, while testifying as a witness, to use a written memorandum to refresh his recollection while testifying, and that such memorandum was not made at or about the time of the transaction concerning which testimony was being given, but was made by the witness a day or two previous to the time of his testifying. It is stated in the briefs of the guardian *ad litem* that the witness used this memorandum to refresh his recollection while testifying. This statement, however, is not borne out by the record. There is nothing in the record from which it can be determined that the witness, in fact, used the memorandum in giving his testimony, or referred to it while testifying; nor is the memorandum in the record from which it could be inferred that there was any error in the ruling of the court thereon. In order to predicate error upon the use by a witness of a memorandum to refresh his recollection while testifying, and which was not made at or about the time of the happening of the events concerning which the witness is testifying, the record must disclose that the witness actually used the memorandum, referred thereto and refreshed his recollection therefrom in giving his testimony, and that the memorandum was of such a nature or character as to have been prejudicial to the complaining party. In view of the record presented, no error prejudicial to the complaining party has been shown.

It is contended that the trial court erred in giving to the jury instruction No. 7, wherein the court informed the jury that they might consider the terms and provisions of the will, in connection with the other evidence, on the question of lack of testamentary capacity.

It has long been the rule in will contests, where want of testamentary capacity is relied upon, that the terms of the will itself may be considered by the jury, in connection with all the other evidence, in determining whether the decedent possessed testamentary capacity, and, while the will may not be denied probate because it is unreasonable, inequitable, or unjust, or some of its provisions may be im-

possible of performance, yet such facts are proper to be considered in determining testamentary capacity. In the instant case, at the time the instrument was signed by Mr. Lyell, his wife was still living but very ill, and she, in fact, died a few hours later. At the time, she lay in the room adjoining that in which decedent signed the instrument. No devise or bequest was made to or for the benefit of his wife; nor was her name mentioned in the instrument. Possibly, he may have believed that she could live but a short time and would not survive him. He had lived for more than a half-century with his wife, and, so far as disclosed, on amicable terms. That he would make no provision for his wife and apparently disregard the obligations that he owed to her seems strange and unusual. The record also discloses that at different times, some years previous to the making of the instrument, he had stated to his children what his intentions were as to the disposition of his property, and the disposition made was different from that of his previously expressed intentions. The provision regarding the $8,000 mortgage, devised in trust for the benefit of his son Lucius, his wife and their children, was of such a nature that it is probable, or at least possible, that it could not have been carried into effect. Certainly, the provision could not have been carried out without the cooperation of his son Lucius and his wife. Another significant thing was that, in devising the bulk of his property in trust to an individual, where that trust might, and probably would, extend over a period of 25 to 40 years, he required and made no provision for a bond or any security to be taken from the trustee for the performance of the trust. These things were proper for the jury to consider and, we think, the court properly instructed the jury that they had a right to consider these matters in determining whether decedent possessed testamentary capacity.

The court, by another instruction, informed the jury that a will could not be defeated because its provisions were unjust, unreasonable, or inequitable, provided the testator

had capacity to make the instrument; that it was his right to dispose of his property as he saw fit. Under the circumstances, there was no error in the instruction given.

Complaint is made because the court, in instruction No. 12, did not specifically limit the consideration of the jury to the question of testamentary capacity. In another instruction, the jury were informed that this was the sole question for their determination. The charge, as a whole, must be considered, and, when so considered, it appears that the only question for the jury to determine was that of testamentary capacity.

Complaint is made because the court refused to give a requested instruction, to the effect that the will was proposed for probate by Dafoe, who was named therein as executor, and that it was his duty to propose it for probate. No authorities are cited, nor do we know of any authority which requires the court to instruct the jury as to who proposed the will for probate, nor that it was the duty of any person to propose it. The only question, for the jury to determine was the question of testamentary capacity, and that question was fully and fairly submitted to the jury.

Complaint is made also because the court did not direct a verdict for proponent, and, in that connection, that the verdict is not sustained by the evidence. These alleged errors may be considered together. If there was sufficient evidence of want of testamentary capacity to require the submission of that question to the jury, then, of course, the court should not have withdrawn it from the jury. If there was evidence requiring that question to be submitted to the jury, then the finding of the jury, under proper instructions, is conclusive upon that question. The record is somewhat voluminous, and it would serve no useful purpose to undertake to outline it in detail. We shall, however, point out some of the facts disclosed by the record.

In the instrument it is stated that the decedent was 74 years of age. The evidence shows that a few weeks be-

fore his death he and his wife celebrated their golden wedding anniversary; that one of the children was 47 years of age and the others somewhat younger; from which it appears that decedent was well advanced in years. Up to within a year or so he had been a strong, healthy man, weighing 220 pounds. About a year previous to his death he began to fail physically. He lost greatly in weight and at the time of making the will he was so emaciated that he weighed but about 100 pounds. He had become so physically feeble that he could not care for himself; had to be assisted in getting up from his cot or bed and in going to the bathroom. It appears also that during the later months or weeks of his life he at times became very talkative and would talk continually. At other times he was silent, taciturn, and had little, if anything, to say. Within two or three weeks of his death he seems to have nearly lost his eye-sight, so that he could not see to read, and this affliction came upon him only two or three weeks before his death. He had stomach and throat trouble, the precise nature of which is not stated. He had difficulty in talking. Sometimes in his talk he would ramble from one subject to another; he frequently miscalled the names of members of his family, and would call his own daughter by names other than her own; did not recognize at times near friends and relatives, and on the morning after the will was made, when informed that his wife had passed away, he gave no sign that he heard or was interested in the fact. Previous to his becoming so nearly helpless, in going to his bedroom he would frequently start for the cellar door, instead of for the door of his bedroom. At one time, a few weeks before his death, he insisted upon accompanying one of his relatives to the railway station from the home of his son, where he was living with his wife. He was so feeble that it was necessary for him to stop and rest on the way. He told this relative that he had $8,000 then on his person. She insisted that he ought to put it in the bank, and that he should not carry such a sum about with him. Whether

he had the money on his person as stated, or whether he put it in the bank, is not disclosed. There are many other incidents related by the witnesses which would indicate very strongly that his mind was seriously affected and that he was wandering, at times at least.

On the other hand, the evidence on behalf of proponent would tend to show that on the night that he executed the instrument he gave the details of what he desired put in his will; that after it was prepared and read to him he called attention to discrepancies and to matters that were not as he desired, and that he wanted corrections made, which were done. Taking the evidence on behalf of the proponent, standing alone, it would have been sufficient to require the finding that decedent possessed testamentary capacity; but, on the whole, there was sufficient from which the jury might reasonably infer a want of testamentary capacity, and, while we might have reached a different conclusion than that reached by the jury, that fact alone will not justify us in setting aside the verdict. The jury were the triers of fact. It was for them to weigh the evidence; it was for them to determine which of the witnesses they would believe. We are constrained to hold that there was sufficient evidence to require the submission to the jury of the question of testamentary capacity, and the jury's finding is conclusive upon this court.

Numerous errors are assigned, to the effect that the court erred in permitting witnesses for the contestants to testify to conclusions. We have carefully examined all of the testimony and each of the rulings complained of, and find no prejudicial error committed in that respect. If any criticism should be made of the rulings of the trial court, it seems to us that they were in many respects more favorable to the proponent than to contestants.

Finally, it is urged that the trial court committed error by permitting counsel for contestants in his address to the jury to make, over objections, an impassioned statement of facts, not warranted by the record, and that such statement was prejudicial to the proponent. Objection

seems to have been made and affidavits filed and attached to the motion for a new trial, purporting to show the statement to which exceptions were taken. The affidavits, however, are not incorporated in the bill of exceptions; nor does the record disclose that the affidavits were brought to the attention of the trial court.

It is a well-established rule that this court will not consider affidavits, used in support of a motion for a new trial, unless they are contained in the bill of exceptions.

An examination of the entire record fails to disclose that any error prejudicial to the proponent was committed. The judgment of the district court is therefore

AFFIRMED.