IN RE ESTATE OF GUSTAF ROBERT NOREN.
FEDERAL TRUST COMPANY OF LINCOLN, APPELLANT, V.
ESTHER NELSON, APPELLEE.

FILED APRIL 25, 1930. No. 26614.

*John J. Ledwith, Max Towle* and *H. N. Mattley,* for appellant.

*Wilmer B. Comstock* and *Clark Jeary, contra.*

HEARD before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY and DAY, JJ., and CHARLES H. STEWART, District Judge.

CHARLES H. STEWART, District Judge.

This is an appeal from a judgment of the district court for Lancaster county, denying probate to an instrument as the last will and testament of Gustaf Robert Noren, deceased.

Gustaf Robert Noren lived for many years on his farm near the village of Waverly, Nebraska. His family consisted of a wife and an adopted daughter, Esther Nelson,

contestant herein. Noren died at his home on June 15, 1927, at about the age of 84 years. His wife died a few months before this. The instrument offered for probate was executed at the city of Lincoln on March 30, 1927. It is in legal form, was signed by Gustaf Robert Noren as testator and was witnessed by five attesting witnesses. This instrument is too long to be set forth in full. It purported to direct the payment of debts; the expenses of testator's last illness and burial, and the expense incident to the administration of his estate.

In the instrument the testator expressed a desire to be buried in the cemetery lot where his departed wife reposed and provided for the erection of a monument at a cost not to exceed the sum of $1,000. By the express terms of the instrument the adopted daughter, Esther Nelson, was given the sum of $1,000 as her own absolutely, and there was given to the Federal Trust Company of Lincoln, Nebraska, as trustee for said adopted daughter, the sum of $5,000, upon terms and conditions providing that such trust company should have power to manage, handle and control said trust fund and semi-annually pay to said adopted daughter the net proceeds thereof. By the terms of said trust, said fund to continue during the lifetime of said adopted daughter and upon her death immediately terminate, and said trust fund in the amount of $5,000 become a part of the residue of said estate. Other provisions practically make the fund a spendthrift trust. Bequests of $1,000 each are directed to be paid to each of two brothers and one sister, and a further bequest of $3,000 is directed to be paid to a niece. Said instrument purports to give, devise and bequeath all the rest, residue and remainder of the estate to the Federal Trust Company of Lincoln, Nebraska, as trustee, upon terms and conditions giving it general power to manage, handle and control said estate; to sell the personal property and if necessary, upon proper order of court, to sell the real estate and invest the proceeds in bonds and securities described in said trust. The trust further directs that semi-annually said trustee shall

pay to Lancaster county, Nebraska, the net income from said trust estate, to be used by said county for charitable purposes in said county. In this connection, request is further made that Lancaster county give personal care to the cemetery lot before referred to. The instrument nominates and requests the court to appoint said trust company executor, and the attorney who drew the will is requested to represent said estate in the administration thereof. By the terms of said trust no bond is required of the trustee. These we think are the important provisions which must be considered in connection with this appeal.

The Federal Trust Company of Lincoln offered this instrument for probate as the last will and testament of Gustaf Robert Noren, and objections were filed by the adopted daughter, Esther Nelson, as contestant. On appeal to the district court for Lancaster county issue was joined on the petition and objections, and a trial was had before the court and a jury. A verdict concurred in by eleven members of the jury was returned for the contestant and against the proponent. Upon this verdict judgment was entered by the court denying probate to the instrument offered as the last will and testament of Gustaf Robert Noren, deceased. Upon the overruling of a motion for new trial, proponent appealed to this court.

In the trial below mental capacity and undue influence were the only issues submitted to the jury. It is claimed by the appellant that a further issue of fact was submitted, but our views on this will be made plain in a later discussion of the instructions.

As we view them, the errors assigned by appellant present but two questions, namely, the sufficiency of the evidence to sustain the verdict of the jury, and the further question of alleged error in the court's instructions. We shall, however, consider one important ruling of the court on evidence offered and received.

It is the claim of appellant that on this record there was no question of fact to be submitted to the jury and that proponent's motion for peremptory instruction in its favor

should have been sustained by the trial court. We shall first consider the evidence by contestant on the issue of mental capacity raised by the pleadings.

At the time the purported will was executed, Noren was at least 84 years old and his physical health was impaired to some extent, not only by the burden of many years, but by reason of severe burns which he received a short time before the instrument was drawn. Death from a complication of disorders followed two months later.

Evidence was offered by the contestant tending to show certain fixed delusions of suspicion and persecution, not concerning strangers, but rather those closest to him in contact, acquaintance and relationship. This evidence is found in the testimony of lay witnesses who were close neighbors and long acquaintances. This is to the effect that, without any foundation in fact and wholly without provocations, Mr. Noren for a number of years before his death harbored deep resentment and manifested great dislike for a brother who lived in the immediate neighborhood. It is related by one witness that at the time of the funeral of Mr. Noren's wife this brother visited the home and expressed natural sympathy for his bereaved brother, and that thereupon Mr. Noren stated that he wished to give the brother a memory verse, and calling for a Bible requested that a minister there present turn to the thirty-fifth Psalm. Assuming that all who may ever have occasion to refer to this opinion are familiar with this particular portion of the old testament, no extended comment will be made, except to say that it is significant that this old man should select this Psalm in which David prays for the confusion of his enemies and asks to be delivered from them. The entire record contains no evidence which even suggests any reason for this feeling.

It further appears from the evidence that in later years Mr. Noren manifested lack of confidence and affection for his adopted daughter, the contestant, in marked contrast to the close and friendly association of the two at an earlier time. This appears to have come about through a belief

on the part of Mr. Noren that false and reckless statements of and concerning him by his daughter had brought him trouble. It nowhere appears in the evidence that any such statements were in fact ever made. This attitude was a marked departure from the intimate and friendly relations existing between Noren and his daughter for nearly 17 years, during which time the daughter remained in the home and was everything a loving and dutiful daughter should be. During these years Noren showed the greatest solicitude for the welfare of this girl and guarded her association with other children to the point where it seemed she was being denied even ordinary freedom in social affairs.

In the year 1896 a will was drawn by Noren and his wife in which, upon the death of Mr. and Mrs. Noren, all of the property was to go to the adopted daughter. By this will, John Warner, a neighbor and resident of Waverly, was appointed guardian for her. This will was witnessed by two citizens of Waverly, Nebraska. In 1926 another will was drawn by Noren in which the adopted daughter was given the sum of $2,000 and no more. This will was prepared by an officer of the Federal Trust Company of Lincoln, Nebraska; was witnessed by parties residing at Lincoln, and in it the Federal Trust Company was named as executor. This will placed the remainder and residue of the estate with said trust company, in trust, upon conditions differing little in general terms from those contained in the instrument under consideration. The third will drawn is the will in controversy.

Evidence was further introduced tending to show that Noren for a number of years before his death entertained groundless suspicions against most of his neighbors and believed they were trying to steal his property. In addition to all this, the evidence shows many acts from time to time on the part of Mr. Noren which would indicate marked peculiarities and eccentricities to say the least.

Finally, it is shown by the record that Dr. Griffith, who qualified as an expert on the subject of mental diseases, in

answer to a hypothetical question propounded to him, stated that in his opinion Mr. Noren on the date the instrument was drawn was of unsound mind. The evidence in this case is voluminous and a more minute analysis at this time is impracticable.

Proponent offered testimony in volume on this question sharply in conflict with that offered by the contestant. It is not, however, for this court to weigh the evidence and determine which party has presented the more convincing proof. The case is not for trial *de novo* here. We are called upon to determine the single question of the sufficiency of the evidence to sustain the verdict of the jury. *In re Estate of Kerr*, 117 Neb. 630.

Where the record in a law action contains evidence tending to support a proposition, and reasonable minds might differ as to whether the proposition is supported thereby, the question is one for the jury. *Zinkula v. Zinkula*, 171 Ia. 287.

Taking into consideration the age of Mr. Noren and his relationship to the contestant and the provisions of the will itself; the circumstances related and opinions expressed by the witnesses on the subject of this man's mental condition at the time the instrument was drawn, we conclude that the trial court was right in submitting this question to the jury, and that the verdict of the jury in this regard is supported by sufficient evidence and should not be set aside.

It is also contended by the appellant that on the question of the exercise of undue influence in this case there is a total failure of proof, and that the trial court erred in submitting this question to the jury. With this we cannot agree. Undue influence as condemned by the law in this class of cases is a subtle thing. Much like crime, it is usually surrounded by all possible secrecy. It is almost always difficult to prove by direct and positive proof. It is largely a matter of inferences from facts and circumstances surrounding the testator, his life, character, and mental condition, as shown by the evidence, and the opportunity

afforded designing persons for the exercise of improper control.

It is the theory of the contestant in this case that the Federal Trust Company of Lincoln, by and through its officers and agents, through the exercise of undue influence upon Mr. Noren at and before the time the purported will was drawn, and at a time when he was physically and mentally unsound, caused him to execute an unnatural will, and not a will prompted by his own intelligent volition.

It appears from the evidence that this company as early as the year 1925 was advising Mr. Noren with respect to his investments; that he sought and received from officers of the company advice and suggestion as to the selection of a bank with which to do business. He appears to have acted upon this advice with the greatest confidence. We have heretofore indicated the activity of the company and its officers in the matter of the formal execution of the will. It must be obvious to any reasonable man that by the terms of the will this company, when it was named trustee of a trust fund amounting to probably $40,000 which it would possess for a long term of years, if not forever, received something of value to it far in excess of any statutory fees which would ever be allowed by the court. It was the very choicest business of a kind it was organized to transact and through the handling of which its chief profit is realized.

It nowhere appears from the evidence that there was any special need for charity in Lancaster county, as distinguished from similar needs in other counties. Nothing in the record suggests that Mr. Noren during his lifetime ever had even a passing interest in matters of either public or private charity.

The will drawn, as heretofore indicated, was unnatural and resulted in direct benefits to the trust company having to do largely with its execution. In this connection, the age and physical condition of this man become most important and the evidence in the record suggesting serious mental trouble is most significant.

It is true that none of the facts and circumstances dis-

closed by the record would, standing alone, be sufficient to warrant the court in submitting the issue of undue influence to the jury, but when all these facts are grouped; when the unnatural provisions of the will are noted; when the age and general state of health and mind of the testator are considered; when the relationship of all the parties is frankly analyzed, and the substantial benefits enuring to the trust company are accurately appraised, it becomes apparent that a real question of fact is raised and that the court properly submitted this issue to the jury.

It is pointed out by appellee in her brief that it is a modern practice of trust companies to interest themselves in the matter of drawing wills for clients. It is a part of their business. We can see no difference between the relationship of such a company and one availing himself of such service and that of attorney and client. In both, special trust and confidence are reposed; the parties are not equally informed or skilled on the subject of their transactions, and unusual opportunity is afforded for the violation of confidence by reason of information freely given in reliance upon the peculiar faithfulness and integrity implied by the relationship. Such a relationship is fiduciary.

We shall now consider the matter of alleged erroneous instructions given by the court on its own motion.

Complaint is made that the trial court, after taking from the jury the question of the due execution of the will by instruction No. 5, resubmitted the same question by parts of instructions Nos. 6 and 13. Instruction No. 6 was a general instruction covering the subject of the burden of proof, and here the court told the jury that the burden of proof was upon the proponent to establish by a preponderance of the evidence "that he (the testator) indicated in some manner in the presence of two or more competent witnesses that he intended to sign the instrument as his will, and that said witnesses subscribed said instrument in his presence." Instruction No. 13 contained this language: "Your inquiry should be directed to the issues before you,

as laid down in these instructions, to wit, whether the will was executed according to law." Instruction No. 5 informed the jury that "in this case every formality prescribed by statute for the execution of a will was observed."

Considered together, these three instructions amount to nothing more than a general statement of the burden of proof in Nos. 6 and 13, and a most explicit statement by the court in instruction No. 5 that in this particular case the proponent had fully sustained this burden. It is our view that the jury could not be confused or misled by these three statements. This situation is little different than that arising from an approved practice of trial judges in stating the strict rule of the burden of proof, and in a separate instruction telling the jury that certain stated facts have been conclusively proved or are undisputed. We find no prejudicial error in the giving of these three instructions.

Objection is made to instruction No. 10 given by the court. This instruction in substance informed the jury that the provisions of the will itself might be considered by them in determining the question of mental capacity, and added: "However, such matters will not alone warrant the presumption of mental incapacity, but are proper to be considered by the jury in connection with other facts proved, bearing upon the condition of the mind of the testator." While possibly not the most guarded and exact in the language employed, this instruction, in view of other instructions given by the court, was a fair statement of the law under the evidence being submitted, and is held to be free from error prejudicial to the substantial rights of the proponent.

"Error cannot be predicated upon the failure of the trial court to state the entire law applicable to the questions submitted to the jury in one instruction. The charge must be considered as a whole, to determine whether or not the jury have been properly instructed upon all questions which are submitted to the jury for their determination." *In re Estate of Lyell,* 116 Neb. 827.

Instruction No. 7 is vigorously assailed on the theory that it improperly places the burden of proof on the proponent on the issue of undue influence. We do not so construe this instruction when considered in connection with other instructions given. Instruction No. 15 given by the court on its own motion deals with the question of undue influence and is as follows: "You are instructed that before influence becomes undue influence to vitiate a will, it must be such as to amount to force and coercion destroying the free agency of the testator and there must be proof that the will was obtained by this coercion and it must be shown that the circumstances of its execution are inconsistent with any hypothesis but undue influence which cannot be presumed but must be proved by the contestants and must be proved by them as having been exercised in connection with the will and not with other things." This was a correct statement of the law applicable to the issue of undue influence generally and in the absence of fiduciary relationship.

Instruction No. 7 complained of is as follows: "You are instructed that while the burden of proving undue influence is upon the contestant, yet if the evidence shows that the person who benefits materially by the proposed will stands in a confidential or fiduciary relation to the testator, then the duty devolves upon the person so benefited, to show that said purported will was not signed by the testator through undue influence."

It may be stated generally that, where a testator who is aged and infirm, with his mental faculties impaired, makes a will which is unnatural in its provisions, and in favor of a confidential adviser who is actively concerned in the execution thereof, and who receives substantial and valuable property or rights under the will, there arises a presumption of undue influence, and in such case it devolves upon the beneficiary to overcome the presumption or inference which arises from the proof of these facts by competent evidence sufficient for the purpose. 28 R. C. L.,

146, and cases there cited; *In re Estate of Paisley*, 91 Neb. 139; *In re Estate of Kubat*, 109 Neb. 671.

In the cases of *In re Estate of Paisley*, 91 Neb. 139, and *In re Estate of Kubat*, 109 Neb. 671, this court cites with approval the following holding in the case of *Carroll v. Hause*, 48 N. J. Eq. 269: "Against a beneficiary having a testator under his control, with power to make his will the will of the testator, especially in a case where the testator has made an unnatural disposition of his property, the law presumes undue influence, and puts upon the beneficiary the burden of showing, affirmatively, that when the testator made his will he did not exercise his power over the testator to his own advantage and to the disadvantage of others having an equal or superior claim upon the bounty of the testator."

Further complaint is made that Instruction No. 11 does not correctly define mental capacity, as applied to cases of this kind. Specifically, error is claimed because said instruction contained the following language: "The kind of mental capacity which the law requires as essential to the making of a valid will is such as enables the person * * * to have a reasonable conception of the value and uses of property or money, and a reasonable conception of how property or money may be employed or enjoyed." Taken as a whole, this instruction fairly defines mental capacity as applied to will cases. The part complained of does not appear in many approved instructions covering the subject. However, the instruction otherwise is sufficient as defining the state of mind essential to the making of a valid will. The added portion complained of modifies the strictness of the rule otherwise stated and could not operate to the prejudice of the proponent in this case. This instruction follows closely one given in *In re Estate of Kubat*, *supra*, and is in accord with the rules laid down in *Brugman v. Brugman*, 93 Neb. 408.

We have considered appellant's criticism of instruction No. 12 and find it without merit. While not drawn in the exact words of many approved instructions defining "in-

sane delusions," the substance of the instruction is not open to the criticism directed against it. We hold the instruction as given is free from error prejudicial to the substantial rights of the proponent.

Mere inexactness in the language of an instruction is not ground for reversal, where the jury was not misled. *Reams v. Clopine*, 87 Neb. 673.

The supreme court will disregard any error or defect in instructions given, or error in the failure or refusal to give instructions requested, where the same do not affect the substantial rights of the parties. *Maxson v. J. I. Case Threshing Machine Co.*, 81 Neb. 546. The instructions requested by the proponent and which were refused by the trial court, in a general way reflect appellant's theory of this case and it follows from the foregoing that the refusal of the trial court to give such instructions was not reversible error.

Considering the instructions as a whole in this case, we are convinced that they fairly stated the law of the case; that the jury were not misled thereby, and that they were free from error prejudicial to the substantial rights of the proponent.

In the trial of this case, the court, over the objections of the proponent, admitted evidence of the financial condition of the contestant. Such evidence was helpful to the jury in its consideration of the provisions of the will and was competent proof as bearing upon the issue of mental capacity as well as the issue of undue influence. It was proper for the jury to consider this evidence, along with other evidence in the case in determining such issues. *In re Estate of Gunderman*, 102 Neb. 590; *Manatt v. Scott*, 106 Ia. 203; *Stutsman v. Sharpless*, 125 Ia. 335.

For the reasons stated in this opinion, the judgment of the district court is

AFFIRMED.

THOMPSON, J., dissenting especially to the rule as announced in the opinion as to instruction No. 7.