IN RE ESTATE OF CHARLES STRELOW.
FRANK C. SCHULTZ ET AL., APPELLANTS, V. ANNA BACHELOR ET AL., APPELLEES.

FILED JULY 17, 1930. No. 27197.

*P. James Cosgrave, Wilmer B. Comstock* and *John H. Comstock,* for appellants.

*Meier & Meier, Hall, Cline & Williams* and *Henry J. Beal, contra.*

*A. M. Morrissey, amicus curiæ.*

Heard before Goss, C. J., Dean, Good, Eberly and Day, JJ.

Dean, J.

Frank C. Schultz, Albert Schultz, and Henry Schultz, as proponents, and claiming to be the beneficiaries of the will of Charles Strelow, deceased, filed their petition in the district court for Lancaster county to have an instrument, dated December 30, 1925, purporting to be the last will and testament of the above named Charles Strelow, admitted to probate. Shortly thereafter objections to the probate of the will were filed by the following contestants, being nieces and nephews of Strelow, namely: Anna Bachelor, Michael Baltzer, Hattie Baltzer, Nellie Baltzer Jameson, heirs of Minnie Baltzer, deceased, Louise Feekin, Mary Roop, Bertha Rowland, Robert Strelow, and Fred Strelow. The contestants allege that Charles Strelow did not have the mental capacity to execute the will in suit on the date above mentioned, and that he was induced to execute the

will by reason of undue influence exercised by the proponents and to affix his signature thereto. The action was tried to a jury and, upon submission of the evidence, a verdict was returned in favor of the contestants and against the proponents. Thereupon the court adjudged and decreed that, "in accordance with the verdict of the jury herein, the will of December 30th, 1925, is not the last will and testament of Charles Strelow, and that the proponents, Frank C. Schultz, Albert L. Schultz and Henry F. A. Schultz pay the costs of this action." The proponents have appealed.

The salient facts in the present case were concisely stated in an opinion on a former appeal entitled *In re Estate of Strelow,* 117 Neb. 168. A brief part of the recital, in our former opinion, in respect of certain of the material facts, is here reproduced:

"Charles Strelow and Theodore Strelow were bachelor brothers who became individually owners in fee of certain adjoining lands in Lancaster county, which they respectively farmed and received the usufruct thereof. They were hard-workers, and frugal. They lived and strove for each other. On July 13, 1909, each executed his last will and testament, in due and legal form, by means of which the one became the sole legatee of the other. The will of Charles, so far as material for our consideration, is as follows:

" 'First, I give, devise and bequeath to my brother, Theodore Strelow, all the property, real and personal, * * * which I may own or possess * * * at my death. Second, I hereby appoint my brother, the said Theodore Strelow, the executor of this my last will and testament, and request that no bond be required of him as executor.'

"Theodore's will was the same as that of Charles, except the names of the testator and legatee were reversed. These wills were then by them deposited with the county judge of such county for safe-keeping. Theodore died on November 5, 1925, never having been married, his father, mother, brothers and sisters having each and all preceded him in death, save his brother Charles. On November 27, 1925,

one Robert R. Hastings was appointed guardian of the person of Charles Strelow, and the First Trust Company, a corporation of Lincoln, was appointed guardian of his property (as said in the briefs, owing to his extreme old age—80 or 81 years). On December 30, 1925, Charles Strelow executed, in due and legal form, the will in controversy herein, which, so far as material, provides in substance as follows: The first paragraph contains the usual direction authorizing the executor to pay the funeral expenses, debts, etc., out of his personal property. The second devises to the children of his sister Rike the sum of $5,000, to be divided share and share alike. In the third he states that he has not forgotten, nor been unmindful of, other children of certain of his brothers and sisters, but that it is his will and intention that they do not take or have any of his estate. The fourth is as follows:

" 'I give, devise and bequeath to Albert L. Schultz, Henry F. A. Schultz and Frank C. Schultz, the sons of my old friend and neighbor Albert Schultz, the rest, remainder and residue of my property, both real and personal of every kind and nature wherever situated possessed by me at my death share and share alike.'

"In the fifth he appoints the last above named legatees (appellants herein) as his executors, and revokes all former wills by him made. On January 21, 1926, Charles died, never having been married, the death of his father, mother, and all brothers and sisters having preceded his demise."

The question presented by the record is whether, at the time the will was executed, Charles Strelow was possessed of sound mind and memory and understood the contents of the instrument, or whether such will was the result of undue influence exercised by proponents upon him while he was ill and unable to comprehend the extent of his estate, approximating $70,000, or about that sum.

A physician, who was present when the will was signed, testified that the testator was then ill and under treatment in a hospital and that he appeared to be confused and timid and depressed. In speaking of the will, this witness said to Strelow, "You signed your will in my pres-

ence for them a few days ago," to which Strelow replied, "I don't know, I don't understand it." The physician testified that he, as a medical adviser, was not convinced that Strelow knew he was making a will. Another testified that he examined Strelow on the day the will was executed, and that he was in a "low, muttering delirium" and was being held in bed by one of the sisters at the hospital, and that, in his opinion, he was not then "mentally competent to do anything," but that he was of unsound mind. Another physician testified that he treated one of Strelow's feet for a granular affection and that he was about "the most unkempt person" he had ever seen, very unclean, decrepit and "undergoing senile changes," and that there was a condition of hardening of the arteries.

Dr. F. A. Graham, called as a witness by the contestants, testified that he found a condition of arteriosclerosis in Strelow and that the mind of a person so afflicted is "unable to transact business or to think or to act rationally. It slows them down in every way. They become more or less careless and indifferent, lack of attention to their person, to their clothing, lack of attention to everything around them;" that Strelow was "extremely dirty, clothes dirty, hair dirty, most untidy and most unkempt," the first time he saw him. This physician also testified that, about a week after Strelow signed the will, he was called to see him, and he then asked Strelow if he understood what was in the papers he had signed, and that Strelow replied he did not. In this physician's opinion, Strelow was not of sound mind at the time in question. And a nurse who was in attendance on Strelow, several weeks after the will was executed, testified that he was in a semiconscious condition all of the time that she was on the case and that, by the doctor's orders, no one was permitted to see him except his attorney who was there at least twice a day, and that he, the attorney, once asked the nurse to leave the room.

The evidence of a physician called on the part of the respondents was that he found Strelow "was slowed down a little bit mentally. He got excited easily, and physically

he showed considerable sclerosis, but mentally he was perfectly sane." Several other physicians testified on the part of the respondents that, while Strelow was a very sick man, he appeared to be rational and to know what he was doing.

A niece of the decedent testified that the Strelow brothers and her family had always been on friendly if not intimate terms, but that in later years she had not visited them. She also testified that Charles did not think that it was necessary to hold exercises or to procure a minister for the funeral of his brother Theodore. And in this she is corroborated by the minister who officiated at the funeral and also by the undertaker in charge of the services.

From the evidence of the proponents it appears that they had been acquainted with the decedent for many years; that it was at their suggestion that the attorney who drew up the will was employed, and that they were frequent visitors at the hospital during the time Strelow was ill. On rebuttal, the evidence of a number of witnesses, who were neighbors of the Strelows or who were casually acquainted with them, was offered tending to prove that Charles was of sound mind.

Where the evidence of physicians and others as to the mental capacity of a testator to execute a will is in conflict, such evidence is for the jury as sole judges of the credibility of the witnesses, and the verdict will not be disturbed unless it is clearly wrong. The presumption of undue influence does not arise from the mere fact that the beneficiaries are not related to the testator; but where such beneficiaries were present and had an opportunity to dictate the disposition of the property when the testator was ill and unable to comprehend the full extent of the proceedings, a will may be declared invalid as the result of such undue influence. "Where the issues raised are fraud and undue influence, any evidence, however slight, tending to prove those issues, is freely admitted and circumstantial evidence may suffice as a whole to disprove the will." 1 Schouler, Wills (6th ed.) 368, sec. 298. In the case entitled *In re Estate of Lyell,* 116 Neb. 827, we said:

"In a will contest, where want of testamentary capacity is one of the objections to the probate of a proposed will, the terms of the will, if it be unnatural, unjust, inequitable, or unreasonable, may be considered by the jury, in connection with all the other evidence, in determining whether the decedent possessed testamentary capacity."

And in *In re Estate of Kubat,* 109 Neb. 671, we said:

"In an action contesting the validity of a will for want of mental capacity in the testator, and undue influence exerted upon him, if the evidence on these issues is conflicting, they should be submitted to the jury for determination."

Proponents contend that the verdict was the result of passion and prejudice. But we do not think the objection is well founded, and this, in part, from the fact that the chronology of the case discloses that it has been tried to two juries. At the close of the first trial the proponents brought the record here on appeal, and the case was remanded for a new trial on account of errors occurring during the trial. But, at the close of the second trial, the result was the same, the jury having again found in favor of the contestants and against the proponents.

The proponents now complain of the court's refusal to give an additional instruction requested by them. But this instruction was requested too late for careful consideration by the court, and after all other instructions had been prepared. We have held: "If either party desires an instruction which would serve only to guide the jury in weighing certain features of the evidence in connection with the issues, he must request such specific instruction. The proper time to make the request is when the evidence is concluded, and the proper manner of making it is by submitting in writing the instruction desired." *Osborne v. State,* 115 Neb. 65.

We have carefully examined the instructions given by the court of its own motion and also those requested by the proponents. We find no error in those given by the court nor in the denial of those refused. In fact, the jury

appear to have been properly instructed on every material feature disclosed by the record.

The judgment of the trial court is right and is in all things

AFFIRMED.

The following opinion on motion for rehearing was filed January 2, 1931. *Former judgment of affirmance adhered to; second paragraph of opinion vacated.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOOD, J.

While pending on motion for rehearing, this cause has been reargued on its merits and resubmitted for further consideration. For a full statement of the issues and relevant facts, the reader is referred to the former opinion, *ante*, p. 235.

The entire record has been carefully reexamined. We are satisfied with our former holding, concerning the evidence with respect to the mental capacity of testator, and that that question was properly submitted to the jury. The only questions requiring further consideration are the correctness of the rule announced in the second paragraph of the syllabus of our former opinion, and whether the court erred in submitting to the jury the question of undue influence. If, from the facts and circumstances proved and the inferences properly deducible therefrom, reasonable minds might differ as to whether undue influence had been exercised upon testator and produced or caused the

execution of the will, then the question of undue influence is for the jury's determination. *In re Estate of Noren,* 119 Neb. 653.

The facts that testator makes a will, giving the major part of his estate to strangers to his blood, and that the beneficiaries under his will had opportunity to ˙exercise undue influence in procuring the making of the will, will not, alone, justify an inference that such undue influence was exercised. But, where the testator is aged, infirm, suffering from arteriosclerosis in an advanced stage, confined in a hospital suffering from pneumonia, at times delirious, and at other times in a semicomatose condition, and where there is evidence tending to show that he reposed great confidence and trust in the beneficiaries of his will; that he accepted their advice on other occasions and deferred to their wishes; and that the beneficiaries had taken the testator from the immediate presence of his relatives under circumstances from which it might be inferred that they did not desire him to talk to and be with such relatives; and where there is evidence also tending to show that the beneficiaries visited him very frequently in the hospital and were with him most of the day on which the will was executed; that the attorney who drew the will had been the attorney of the beneficiaries; that the beneficiaries and their attorney had conferred together about the will and the making thereof; that the attorney drafting the will had procured, without suggestion from the testator, so far as the record discloses, alienists to visit the testator on various occasions prior to, at the time of, and subsequent to, the making of the will; that large fees were paid to or demanded by˙ such alienists; that, by the will, more than 90 per cent. of the estate of testator was given to strangers to his blood, while certain of his relatives were entirely disinherited; where the attorney usually employed by testator was accessible, but was not called to draft the will, there is sufficient to excite more than mere suspicion that the will was procured under undue influence, especially where there is evidence tending to show that testator, at the time of making the will, was in-

capable of comprehending what he was doing. These facts, together with other facts disclosed by the record, we think were sufficient to warrant the jury, if they believed the evidence produced by contestants, in finding that undue influence had been exercised. It must be borne in mind, too, that, under the peculiar circumstances, the failure of the beneficiaries, who were present in court, to take the stand and testify, and the failure to call the attorney, who drafted the will, to testify and submit to cross-examination, is significant.

We feel constrained to hold that the court did not err in submitting to the jury the question of undue influence.

The rule announced in the second paragraph of the syllabus of our former opinion has been attacked as in conflict with the rules heretofore announced by this court. We are of the opinion that the statement of law therein contained is too sweeping.

In *In re Estate of Bayer*, 119 Neb. 191, it was held: "Where a will is contested because it is alleged that it was procured by undue influence, the burden is upon the contestants to establish by proof, or by fair inference to be drawn from facts proved, that there was undue influence, which induced the testator to dispose of his property contrary to his intention. In such a case, suspicion or supposition of undue influence is not sufficient either to require the submission of the question to the jury, or to sustain a verdict."

In the case of *In re Estate of Noren, supra,* it was said (p. 659): "Undue influence as condemned by the law in this class of cases is a subtle thing. Much like crime, it is usually surrounded by all possible secrecy. It is almost always difficult to prove by direct and positive proof. It is largely a matter of inferences from facts and circumstances surrounding the testator, his life, character, and mental condition, as shown by the evidence, and the opportunity afforded designing persons for the exercise of improper control."

The correct rule, we believe, is this: In a will contest, it is necessary to submit the question of undue influence

to the jury when the facts and circumstances proved, together with inferences fairly deducible therefrom, are such that reasonable minds might conclude that the will was not the free and voluntary act of the testator, but the result of undue influence exercised upon him.

The second paragraph of the syllabus of our former opinion is vacated. No prejudicial error has been found. We adhere to our former judgment of affirmance.

AFFIRMED; SECOND PARAGRAPH OF
FORMER OPINION VACATED.